## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

| | | |
|---|---|---|
| **BONNIE KUEHN**, individually and on behalf of all others similarly situated, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | **Case No. 5:04 CV-432-OC-10 GRJ** |
| **THE CADLE COMPANY; and FICTITIOUS DEFENDANTS A-Z.** | § § § | |
| Defendants. | § § § | **Jury Demanded** |

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Bonnie E. Kuehn ("Plaintiff") files this First Amended Complaint pursuant to Fed. R. Civ. P. 15 to substitute one affiliated defendant for another. This amendment is made upon information and belief obtained through discovery and independent investigation, to assert claims against the third-party debt collector and servicing agent that actually drafted and issued the dunning letters at issue in this case. Upon information and belief, Cadleway Properties, Inc. performed no actual servicing or debt collection activities against Plaintiff or the class. Thus, Plaintiff hereby substitutes The Cadle Company pursuant to Fed. R. Civ. P. 15 as the proper Defendant debt collector that performed all the acts complained of herein. Because both Cadleway Properties, Inc. and The Cadle Company are owned and operated by Daniel C. Cadle and conduct business out of the same corporate offices, The Cadle Company has been on notice of this action since the initial filing and will suffer no prejudice by this valid amendment.

Through this First Amended Complaint Plaintiff shows the Court the following:

1

## Introduction

1.     This is an individual and class action for damages and injunctive relief for Defendants' violations of (1) the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

2.     Plaintiff brings this class action on behalf of herself and on behalf of all other consumers who are similarly situated, seeking declaratory relief, money damages, statutory damages and restitution from Defendants, as well as an injunction forcing Defendants to stop their illegal practices.

## Jurisdiction and Venue

3.     Jurisdiction of this Court arises under 15 U.S.C. Sections 1640(e) and 1692(d) and 28 U.S.C. Section 1331.

4.     Venue is proper in the Middle District of Florida under 28 U.S.C. Section 1391(b)(2) and (c) in that a substantial part of the events or omissions giving rise to the claims occurred in this District.  Specifically, the debt owned by Cadleway and collected on by Cadle was entered into in Maitland Florida, Plaintiff resides in Leesburg, Florida and Cadle conducted collection activities in Leesburg, Florida through U.S. Mail and telephone correspondence with Plaintiff at her Leesburg address.

5.     Defendant, The Cadle Company, is an Ohio corporation that services and collects on debts owned by numerous entities controlled by Daniel C. Cadle.  On information and belief, The Cadle Company was employed to service and collect on the accounts of Kuehn and the putative class.  The business address for The Cadle Company is 100 North Center Street, Newton Falls, Ohio 44444.  On information and belief, Daniel C. Cadle is the President of The Cadle Company.

6.      Fictitious Defendants A-Z refer to those persons, corporations or legal entities that are the parent, subsidiary, affiliate, predecessor or successor in interest to any of the named Defendants or fictitious parties (other than Cadleway Properties, Inc.), responsible for the acts and claims referred to herein and whose identities are unknown to Plaintiff at the present time, but will be substituted by amendment when ascertained.

7.      Throughout the remainder of this First Amended Complaint, all Defendants will be referred to together as "Cadle"

## Conditions Precedent

8.      All conditions precedent to the filing of this case have been performed, have occurred, or have been satisfied.

## Class Action Allegations

9.      Plaintiff sues on her own behalf and, as class representative, sues on behalf of the following two classes:

> CLASS I.   All consumers in the United States to whom Cadle sent any communication seeking to collect on an Amicus FSB credit card account and to whom Cadle charged interest.

> CLASS II.   All consumers in the United States to whom Cadle sent a collection letter that included an IRS W-9 request for Taxpayer Identification Number and referenced the IRS penalty for failing to furnish a Taxpayer Identification Number.

10.      Plaintiff brings this lawsuit as a class action because, on information and belief (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) Plaintiff's claims are typical of the claims of the class, and (4) Plaintiff can and will fairly and adequately protect the interests of the class. Questions of whether, and to what extent, Cadle engaged in the practices described herein, whether they did so

intentionally or knowingly, and whether they violated the law will be common to all members of the class.

11.     The questions of law and fact common to the members of the class predominate over questions affecting only individual members. The prosecution of individual actions by or against class members would create a risk of inconsistent or varying adjudications with respect to individual class members which would establish incompatible standards of conduct for Cadle.

12.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. It is appropriate to maintain this lawsuit as a class action because Cadle acted on grounds generally applicable to the class, thereby making both preliminary and final injunctive and declaratory relief appropriate with respect to the class as a whole.

13.     Plaintiff's claims are typical of the claims of the class as a whole. Plaintiff can and will fairly and adequately protect the interests of the class, because she has retained experienced counsel to represent the class, has no conflict of interest with the class, and she brings this lawsuit specifically for the protection of the consumers who have been and will be harmed by the practices complained of herein, and not solely to recover for their personal damages.

## Facts

14.     Plaintiff Bonnie Kuehn was employed for a time by Amicus FSB ("Amicus") at its headquarters in Maitland, Florida.

15.     Amicus issued each of its employees an Amicus FSB credit card as part of its employee package.

16.     Plaintiff Kuehn received the Amicus credit card in the mail a few weeks after her employment began, made purchases on the account, and paid according to the terms of the Cardholder Agreement.

17.     In late 2002, Amicus FSB decided to cease all electronic banking operations in the U.S.  As a result, the day after Christmas 2002, Amicus sent letters to all its cardholders informing them that, effective January 1, 2003, their cards would be "deactivated" (*i.e.*, closed), the limit on the card would be changed to zero, and no further purchases would be approved.

18.     Thereafter, Amicus accelerated all cardholder's debts and demanded payment in full.  However, Amicus continued to send monthly statements and accept partial payments on the accounts of Plaintiff and other cardholders until approximately September 2003.

19.     On or about September 29, 2003, Amicus was dissolved and ceased all operations.

20.     In January 2004, Cadleway Properties, Inc. purchased several thousand Amicus credit card accounts from Amicus.

21.     Between September 2003 and January 2004 Plaintiff and other credit card account holders did not receive any information regarding their Amicus account.

22.     On information and belief, Amicus ceased charging interest on the credit card accounts in September 2003.

23.     On or about January 13, 2004, Plaintiff Kuehn received a letter from The Cadle Company purporting to collect on Kuehn's Amicus credit card account.  The letter stated that Kuehn was required to pay a "Total Amount Due" of $7,643.23. (Attached as Exhibit A).  The letter also stated: "We do not use coupon books or send monthly statements."  The letter did not disclose that the "Total Amount Due" included interest and fees.

24.     Although the Amicus debts had ceased incurring interest on September 29, 2003 when Amicus was dissolved, Cadle improperly started charging interest again on all Amicus credit card accounts it was servicing.

25.     However, Cadle failed to disclose that the interest had ceased being charged by Amicus under the Amicus agreement and failed to disclose that Cadle had started charging interest at a daily rate again beginning on or about January 1, 2004 and failed to disclose the rate of interest being charged.

26.     Cadle failed to make the necessary disclosures under the TILA and has since failed to send monthly statements required under the TILA.

27.     The letter sent by Cadle also falsely implies a connection with the Internal Revenue Service in violation of the FDCPA as follows:

> Also enclosed is an **IRS-generated** W-9 to certify your Tax Identification Number (TIN). For individuals, this is your Social Security Number. Please complete this form indicating the above account number, and sign and return it to us as soon as possible. **You are subject to a $50 penalty imposed by the IRS under 26 U.S.C. 6723 if you fail to furnish a TIN.**

## First Cause of Action

### Request for Declaratory Relief

28.     Plaintiff seeks a declaratory judgment from this Court pursuant to 28 U.S.C. Sections 2201 and 2202, declaring that Cadle regularly engaged in the practices described herein and that these practices violate the TILA and the FDCPA.

29.     Plaintiff further seeks an order enjoining Defendants from continuing the acts complained of herein in their attempt to collect on the debts of class members.

## Second Cause of Action

### Request for Relief Pursuant to the TILA

30.     Because Amicus ceased charging interest on or about September 29, 2003 while it still owned the credit card accounts at issue, all Amicus credit card accounts, including Plaintiff's were set at a stated amount.

31.     In the ordinary course and conduct of their business, as aforesaid, Cadle regularly arranged for the extension of consumer credit or offered to extend or arrange for the extension of such credit, as "arrange for the extension of credit" and "consumer credit" are defined in Section 226.2 of Regulation Z, the implementing regulation of the Truth in Lending Act, duly promulgated by the Board of Governors of the Federal Reserve System.

32.     When Cadle took it upon itself to reinstitute a daily finance charge, it was required to comport with the disclose requirements of the TILA.  See 15 U.S.C. 1601 *et seq*.

33.     The following allegations are made with respect to Cadle alleging violations of the Truth in Lending Act and of the Federal Trade Commission Act, as amended, the allegations of the above paragraphs are incorporated by reference as if fully set forth herein.

34.     Since the credit card accounts were terminated by Amicus without cause, several accounts, including Plaintiff's have significant balances.  Cadle regularly permits the Amicus debtors or alleged debtors to repay their debts in more than four monthly installments for which Defendants have been, and are currently charging a finance charge, as 'finance charge' is defined in Section 226.2 of Regulation Z.

35.     Defendants do not provide these customers with consumer credit cost disclosures.

36.     By and through the use of these methods, Cadle:

A.     Failed to disclose the finance charge expressed as an annual percentage rate, as "annual percentage rate" is defined in Section 226.2 of Regulation Z, as required by     Section 226.8(b)(2) of Regulation Z.

B.     Failed to disclose the date on which the finance charge begins to accrue, as required by Section 226.8(b)(1) of Regulation Z.

C.      Failed to disclose the number, amount, and due date or periods of payments scheduled to repay, and the sum of such payments using the term "total of payments," as required by Section 226.8(b)(3) of Regulation Z.

D.      Failed to disclose the total amount of finance charges, with a description of each amount included, using the term 'finance charge' as required by Section 226.8(d)(3) of Regulation Z.

E.      Failed to disclose the annual percentage rate, computed in accordance with Section 226.5 of Regulation Z, as required by Section 226.8(b)(2) of Regulation Z.

F.      Failed to disclose the annual percentage rate accurately to the nearest quarter of one percent, in accordance with Section 226.5 of Regulation Z, as required by Section 226.8(b)(2) of Regulation Z.

G.      Failed to make the disclosures required by Section 226.8 of Regulation Z clearly, conspicuously and in a meaningful sequence, as required by Section 226.6(a) of Regulation Z.

37.     By and through the acts and practices set forth above, Cadle failed and continues to fail to comply with the requirements of Regulation Z, the implementing regulation of the Truth in Lending Act, duly promulgated by the Board of Governors of the Federal Reserve System.

38.     Pursuant to Section 103(q) of the Truth in Lending Act, Defendants' aforesaid failure to comply with the provisions of Regulation Z constitutes violations of the Act. Pursuant to Section 108 of the Act, Defendants have therefore violated the Federal Trade Commission Act, as amended.

39.     As a result of its violations of the TILA, Cadle is liable to Plaintiff for her actual damages, statutory damages, and costs and reasonable attorneys' fees. The conduct of Cadle de-

scribed above has made it necessary for Plaintiff to retain the services of the attorneys whose names are subscribed to this petition. Plaintiff is therefore entitled to recover from Cadle additional sums to compensate her for attorneys' services in the preparation and prosecution of this action as well as a reasonable fee for any and all appeals to other courts.

40.    On behalf of herself and each class member, Plaintiff seeks an order of the Court directing Cadle to pay actual damages to all class members consisting of all money obtained through the use of any illegal acts in violation of TILA, including but not limited to all interest charged and collected on Amicus Accounts.

41.    In addition, Plaintiff seeks on behalf of all other class members, without regard to minimum individual recovery, an award in the amount of the lesser of $500,000.00 or 1% of the net worth of Cadle, as well as reasonable attorneys' fees.

42.    Plaintiff also seeks injunctive relief requiring Cadle to provide the TILA disclosures prior to further collection efforts.

### Third Cause of Action

### Request for Relief Pursuant to FDCPA

43.    Section 1692(e)(2)(a) of the Fair Debt Collection Practices Act "FDCPA" states that it is a violation for a debt collector to falsely represent "the character, amount, or legal status of any debt;"

44.    By failing to disclose that it began charging interest at a daily rate on or about January 1, 2004, after Amicus ceased charging interest, Cadle falsely represented the amount and character of the alleged debt in violation of the FDCPA.

45.    By demanding interest that was greater than the amount for which Plaintiff Kuehn and other class members were liable, Cadle violated the FDCPA as to the members of Class I.

46.     Section 1692(e)(10) states that it is a violation of the FDCPA for a debt collector to use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

47.     Section 1692(e)(9) states that it is a violation of the FDCPA for a debt collector to use or distribute "any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States, or any State, or which creates a false impression as to its source, authorization, or approval."

48.     Along with Cadle's form collection letter it sends an IRS W-9 Taxpayer Identification Number (TIN) Request form.  Cadle's form letter improperly implies connections with the IRS as follows:

> Also enclosed is an IRS-generated W-9 to certify your Tax Identification Number (TIN).  For individuals, this is your Social Security Number.  Please complete this form indicating the above account number, and sign and return it to us as soon as possible.  You are subject to a $50 penalty imposed by the IRS under 26 U.S.C. 6723 if you fail to furnish a TIN.

49.     This sentence violates section 1692(e)(9) and (10) in that it falsely represents that the IRS is going to be contacted regarding the debt at issue and that Cadle is in contact with or associated with the Government.

50.     The form letter falsely creates the impression that the IRS will be intervening if the account holder does not provide Cadle with all of their current information including social security number, and current address.

51.     Cadle is without the authority to determine when the IRS will issue penalties.  Thus it is improper for Cadle to assert that the account holder will be "subject to a $50 penalty imposed by the IRS if you fail to furnish a TIN".

52.     Indeed, the IRS does not require creditors that discharge debts to file Form 1099 or other forms.  On information and belief, Cadle does not regularly send such forms on accounts it owns or collects for.  Cadle's threat of IRS intervention is to create the impression in the account holder's mind that failure to provide Cadle with information will get them in trouble with the IRS, and subject them to a $50 penalty.

53.     Cadle's inclusion of a Request for Taxpayer Identification Number is being used to improperly obtain information concerning the consumer, in violation of § 1692(e)(10).  Because it is routinely used in Cadle's dunning form letter, this violation applies to Plaintiff as well as the members of Class II.

54.     As a result of its violations of the FDCPA, Cadle is liable to Plaintiff for her actual damages, statutory damages, and costs and reasonable attorneys' fees. The conduct of Cadle described above has made it necessary for Plaintiff to retain the services of the attorneys whose names are subscribed to this petition. Plaintiff is therefore entitled to recover from Cadle additional sums to compensate the Plaintiff for attorneys' services in the preparation and prosecution of this action as well as a reasonable fee for any and all appeals to other courts.

55.     On behalf of herself and each class member, Plaintiff seeks an order of the Court directing Cadle to pay actual damages to all class members consisting of all money obtained through the dunning letters described above in violation of FDCPA.

56.     In addition, Plaintiff seeks on behalf of all other class members, without regard to minimum individual recovery for actual damages, an award in the amount of the lesser of $500,000.00 or 1% of the net worth of Cadle, and reasonable attorneys' fees.

**Demand for Jury Trial**

57.     Please take notice that Plaintiff demands trial by jury in this action.

**Prayer**

11

WHEREFORE, Plaintiff respectfully prays that this Court:

1.      Upon notice and hearing, but at the earliest practicable date, certify this action as a class action.

2.      Upon final trial of this cause, enter a Declaratory Judgment declaring that the practices complained of herein are illegal and a Permanent Injunction enjoining Defendants from engaging in the illegal practices set forth herein.

3.      Upon final trial of this cause, award Plaintiff and the members of the class judgment for their damages and statutory civil penalties as set forth herein.  Plaintiff further prays that these damages be multiplied pursuant to the provisions of the law.

4.      Award punitive damages in an amount necessary to punish Defendants for their conduct.

5.      Award Plaintiff and the class attorneys' fees and costs of court.

6.      Award pre-judgment and post-judgment interest at the maximum rate permitted at law or at equity.

7.      Grant Plaintiff and the class all other relief to which they may show themselves and the class entitled.

Respectfully submitted,

**BRIAN W. WARWICK**
**TRIAL COUNSEL**

**Counsel for the Plaintiff and the Class:**
Brian W. Warwick, Fla. Bar No. 0605573
Janet R. Varnell, Fla. Bar No. 0071072
**VARNELL & WARWICK, P.A.**
20 La Grande Boulevard
The Villages, Florida 32159
Phone:  (352) 753-8600
Fax:     (352) 753-8606

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished via U.S.

Mail this _22_ day of April, 2005  to:


DALE T. GOLDEN, ESQUIRE
MARSHALL, DENNEHEY, WARNER
 COLEMAN & GOGGIN
Florida Bar No. 094080
201 E. Kennedy Blvd., Suite 1100
Tampa, FL  33602
Phone:  (813) 472-7810
Fax:     (813) 472-7811


Brian W. Warwick

# EXHIBIT A

**CADLEWAY PROPERTIES, INC.**
100 North Center Street
Newton Falls, OH 44444
(330) 872-0918
888-462-2353 (888-GO-CADLE)
FAX (330) 872-5367
January 13, 2004

Bonnie E. Kuehn
27846 W Pelican Isle Drive
Leesburg, FL 34748

RE: MarketplaceBank/Amicus FSB Credit Card Account
MarketplaceBank/Amicus Account No. 4425360000026267
Principal Balance: $7,621.52
Total Amount Due: $7,643.23
Our Account No. 0K131033

Dear Customer:

Cadleway Properties, Inc. purchased your **MarketplaceBank/Amicus FSB Credit Card** account through Matrix Bancorp. Therefore, please send all future payments to the address above effective immediately. We do not use coupon books or send monthly statements. To help us quickly and properly credit your payment, please write your new account number, 0K131033, on your check or money order.

If, by chance, you, or any co-signers or co-applicants on the account has filed bankruptcy, please forward any papers showing this debt was included.

We calculated the "Total Amount Due" above with information in our system as of the date of this letter. We reserve the right to correct any error in calculating the "Total Amount Due" at any time.

Please read the accompanying notice, which we provide in compliance with the Fair Debt Collection Practices Act. Also enclosed is an IRS-generated W-9 to certify your Tax Identification Number (TIN). For individuals, this is your Social Security Number. Please complete this form indicating the above account number, and sign and return it to us as soon as possible. You are subject to a $50 penalty imposed by the IRS under 26 U.S.C. § 6723 if you fail to furnish a TIN.

IN ACCORDANCE WITH 15 U.S.C. 1692E (11), PLEASE BE ADVISED THAT THE PURPOSE OF THIS LETTER IS TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.

Please contact me to make repayment arrangements for your loan. I can be reached between the hours of 6:00 p.m. and 11:00 p.m. Sunday, and 12:00 p.m. and 11:00 p.m. Monday through Thursday at the toll-free number listed above at Ext. 3198.

Yours very truly,
*Clayton Tawney*
Clayton Tawney
Account Officer

CT:AS
Enclosures

# NOTICE

In accordance with 15 U.S.C. 1692e (11), please be advised that the purpose of this letter is to collect a debt, and any information obtained from you will be used for that purpose. Each of the items contained herein applies directly to the debt, which Cadleway Properties, Inc. is attempting to collect from you:

1.      If you want to know the exact name and address of the original creditor, please notify us in writing no later than thirty (30) days after receipt of this Notice and we will provide you with this information.

2.      If within thirty (30) days of receipt of this Notice you do not dispute the validity of the debt, or any portion of the debt, which Cadleway Properties, Inc. is attempting to collect from you, the debt will be assumed by us to be valid. If you notify us within the thirty (30) day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of the judgment against you, if any, and a copy of such verification will be mailed to you by us.

3.      The total amount due contained in the accompanying letter is the total amount due based on the information currently in our system as of the date of this letter. Please confirm this balance or state the amount which you believe is the correct balance so that we may correct our records before we report to the credit bureau. We reserve the right to correct any error in calculating the total amount due at any time.

## CADLEWAY PROPERTIES, INC.

The total amount due as of _____ of $_____ is confirmed.

Total amount due is incorrect.

My/our records show the total amount due should be _____.

Our File No.: _____          Date: _____

Home Phone: _____          Work Phone: _____

Comments: _____

_____

_____

Signed: _____

| | | |
|---|---|---|
| Form **W-9**<br>(Rev. January 2002)<br>Department of the Treasury<br>Internal Revenue Service | **Request for Taxpayer<br>Identification Number and Certification** | Give form to the<br>requester. Do not<br>send to the IRS. |

*Print or type*
*See Specific Instructions on page 2.*

Name

Business name, if different from above

Check appropriate box: ☐ Individual/ Sole proprietor   ☐ Corporation   ☐ Partnership   ☐ Other ▶ .................   ☐ Exempt from backup withholding

Address (number, street, and apt. or suite no.)

Requester's name and address (optional)

City, state, and ZIP code

List account number(s) here (optional)

---

**Part I**   **Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 2. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 2.

**Note:** *If the account is in more than one name, see the chart on page 2 for guidelines on whose number to enter.*

Social security number

or

Employer identification number

---

**Part II**   **Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 2.)

Sign Here   Signature of U.S. person ▶                                      Date ▶

---

## Purpose of Form

A person who is required to file an information return with the IRS must get your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

Use Form W-9 only if you are a U.S. person (including a resident alien), to give your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

If you are a foreign person, use the appropriate Form W-8. See Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities.

**Note:** *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 30% of such payments after December 31, 2001 (29% after December 31, 2003). This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part II instructions on page 2 for details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions on page 2 and the separate Instructions for the Requester of Form W-9.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.