UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BONNIE KUEHN, individually and on behalf
of all others similarly situated,

           Plaintiff,

-vs-                                              Case No. 5:04-cv-432-Oc-10GRJ

THE CADLE COMPANY,

           Defendant.
_____

## **O R D E R**

This Truth In Lending Act and Fair Debt Collection Practices Act class action is before the Court for consideration of Defendant The Cadle Company's Motion to Dismiss (Doc. 20), and Motion to Transfer and to Substitute Trustee as Party in Interest (Doc. 34). The Plaintiff, Bonnie Kuehn, has responded to both motions (Docs. 22, 34), and they are ripe for resolution. For the reasons set forth below, both motions are due to be denied.

### **Background and Facts**

The following facts are alleged in Ms. Kuehn's Amended Complaint (Doc. 14) and are taken as true for the purposes of the motion to dismiss. Ms. Kuehn was an employee of Amicus FSB at its headquarters in Maitland, Florida. See Amended Complaint ("Am. Complt."), ¶ 14. As part of its employee package, Amicus issued all of its employees, including Ms. Kuehn, an Amicus FSB credit card. Id., ¶ 15. Ms. Kuehn used her Amicus credit card throughout her employment, making purchases and payments to the account

as required by the terms of the Cardholder Agreement. Id., ¶ 16. In late 2002, Amicus decided it would cease all electronic banking operations in the United States, and on December 26, 2002, sent letters to all of its credit card holders informing them that, effective January 1, 2003, their cards would be cancelled. Id., ¶ 17. Soon thereafter, Amicus demanded payment in full of all outstanding balances. However, Amicus continued to accept partial payments from Ms. Kuehn and others until approximately September 2003. Id., ¶ 18. Amicus was dissolved and ceased all operations on September 29, 2003. Id., ¶ 19. Between September 2003 and January 2004, Ms. Kuehn and the other Amicus credit card holders did not receive any information regarding their accounts, from any entity, and Amicus stopped charging interest on the accounts in September 2003. Id., ¶¶ 21-22.

Defendant The Cadle Company ("Cadle") is an Ohio corporation that services and collects on debts owned by numerous entities controlled by Daniel C. Cadle, who is also the president of Cadle. Am. Complt., ¶ 5. In January 2004, Cadleway Properties, Inc., another company owned and operated by Daniel C. Cadle, purchased several thousand outstanding Amicus credit card accounts from Amicus, including Ms. Kuehn's account. Id., ¶ 20. According to the Plaintiff, Cadle and Cadleway Properties, Inc. conduct business out of the same corporate offices, but Cadleway Properties, Inc. did not perform any servicing or debt collection activities on any of the accounts. Id., p. 1. Rather, it was

Cadle who was employed to service and collect on the accounts of Ms. Kuehn and other members of the putative class.[1] Id., ¶ 5.

On January 13, 2004, Ms. Kuehn received a letter from Cadle purporting to collect on her Amicus credit card account balance. Am. Complt., ¶ 23. The letter, which is attached as Exhibit A to the Amended Complaint, and thus may be considered part of the Amended Complaint,[2] stated that Ms. Kuehn had a "Total Amount Due" of $7,643.23. The letter did not state that the "Total Amount Due" included interest and fees. Id. Ms. Kuehn alleges that Cadle began to improperly charge interest and fees once it began to service this account and attempt collection on it. Id., ¶ 24. Cadle also failed to disclose that it had begun to charge interest as of January 1, 2004, failed to disclose the rate of interest being charged, and has failed to send monthly statements, as required by the Truth in Lending Act. Id., ¶¶ 25-26. The letter sent by Cadle also implied a connection with the Internal Revenue Service by stating:

> Also enclosed is an **IRS-generated** W-9 to certify your Tax Identification Number (TIN). For individuals, this is your Social Security Number. Please complete this form indicating the above account number, and sign and return it to us as soon as possible. **You are subject to a $50 penalty imposed by the IRS under 26 U.S.C. 6723 if you fail to furnish a TIN.**

Am. Complt., ¶ 27 (emphasis in Am. Complt.).

---

[1] Ms. Kuehn has also brought this lawsuit against various "Fictitious Defendants A-Z" who are persons, corporations or legal entities that are the parent, subsidiary, affiliate, predecessor, or successor in interest to Cadle or other fictitious parties, who are responsible for the acts and claims referred to in this lawsuit. Am. Complt., ¶ 6.

[2] See Fed.R.Civ.P. 10(c).

## Procedural History

Ms. Kuehn initiated this action on September 22, 2004 against Cadleway Properties Inc., alleging violations of the Truth In Lending Act, 15 U.S.C. § 1601 et seq., ("TILA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). (Doc. 1). Cadleway Properties moved to dismiss the Complaint (Doc. 4), on the grounds that Ms. Kuehn was bound by an arbitration provision contained in her Cardholder Agreement with Amicus, which Cadleway Properties became the assignee of at the time it purchased Ms. Kuehn's account. In response, Ms. Kuehn argued that Cadleway Properties had no authority to enforce the arbitration provision, and that, at the very least, Ms. Kuehn should be permitted an opportunity to conduct limited discovery on the purchase agreements between Amicus and Cadleway Properties, and the relationship between Cadleway Properties and Cadle. (Doc. 7).

The Magistrate Judge conducted a telephone hearing on February 23, 2005 on Cadleway Properties' Motion to Dismiss, and entered an order authorizing Ms. Kuehn to conduct limited discovery on the issue of Cadleway Properties' ability to enforce the arbitration clause as an assignee of the Cardholder Agreement (Doc. 11). Ms. Kuehn engaged in several months of discovery, at the conclusion of which she determined that although Cadleway Properties is the owner of her credit card account, Cadleway Properties did not perform any debt servicing or debt collection activities on the account. (Doc. 16). Rather, it was Cadle who actually performed these services as a third party debt collector. Based on this information, Ms. Kuehn filed her Amended Complaint dismissing Cadleway

Properties and substituting Cadle as the sole defendant (Doc. 14), and requested that Cadleway Properties' original motion to dismiss be denied as moot. The Court entered an Order (Doc. 23) denying as moot Cadleway Properties' motion on May 31, 2005.

The Amended Complaint is styled as a class action on behalf of both Ms. Kuehn as an individual and as class representative of two groups: (1) all consumers in the United States to whom Cadle sent any communication seeking to collect on an Amicus FSB credit card account and to whom Cadle charged interest; and (2) all consumers in the United States to whom Cadle sent a collection letter that included an IRS W-9 request for Taxpayer Identification Number and referenced the IRS penalty for failing to furnish a Taxpayer Identification Number. Am. Complt., ¶ 9. However, as of the date of this Order, Ms. Kuehn has not filed any motions seeking class certification.

The Amended Complaint is in large part identical to the original complaint, with the exception of a few additional paragraphs identifying Cadle, and otherwise substituting Cadle for Cadleway Properties in the factual allegations. There are still three claims: (1) a claim that Cadle has violated the Truth In Lending Act; (2) a claim that Cadle has violated the Fair Debt Collection Practices Act; and (3) a request for a declaratory judgment that Cadle regularly engages in practices that violate both of these Acts. In addition to injunctive relief, Ms. Kuehn also seeks statutory damages and punitive damages.

On May 17, 2005, Cadle filed its motion to dismiss the Amended Complaint. On October 14, 2005, Ms. Kuehn filed a petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code. On November 1, 2005, she amended her petition to include this

lawsuit in her schedule of personal property. A Trustee was appointed to administer her estate, and on January 18, 2006, the Trustee filed his Report of No Distribution, stating that there is no property available for distribution from the estate and that the estate has been fully administered. Cadle filed its motion seeking to transfer this case to Bankruptcy Court as part of Ms. Kuehn's estate on January 31, 2006.

## Discussion

### A.     *Motion to Transfer and Substitute Trustee As Party in Interest*

Based on Ms. Kuehn's October 14, 2005 bankruptcy petition, Cadle seeks to have this case transferred to the Bankruptcy Court for the Middle District of Florida, Orlando Division, and to have the Trustee of Ms. Kuehn's bankruptcy estate substituted as the proper party plaintiff. In support of this very brief motion, Cadle has attached a copy of Ms. Kuehn's bankruptcy petition, including her Amendment to Schedule B-Personal Property, dated November 1, 2005, which lists this lawsuit as part of her personal property to be included in her bankruptcy estate. Cadle also points to 11 U.S.C. § 541(a)(1), which provides that "all legal or equitable interests of the debtor in property as of the commencement of the case" automatically become part of the bankruptcy estate, as well as 11 U.S.C. § 323, which provides that the only proper party in interest with the legal capacity to represent a bankruptcy estate or to sue or be sued is the trustee.

Ms. Kuehn has filed an opposition to Cadle's motion to transfer (Doc. 35), asserting three grounds for rejecting Cadle's motion. First, Ms. Kuehn contends that Cadle's motion to transfer is untimely pursuant to Rule 9027 of the Federal Rules of Bankruptcy

6

Procedure. For purposes of this action, Rule 9027 specifies that a party seeking to transfer a related pending civil action to the bankruptcy court where the related bankruptcy action is located must effect the removal within 90 days after the bankruptcy court's issuance of the order for relief. Fed.R.Br.P. 9027(a)(2). In this case, the order for relief was entered on October 14, 2005. See Doc. 35, Ex. A. Thus, according to Ms. Kuehn, Cadle had to seek to have this case transferred to the Bankruptcy Court no later than January 14, 2006. Because this motion was not filed until January 31, 2006, Ms. Kuehn contends that it is untimely and should be denied.

Ms. Kuehn is correct. Rule 9027 is explicit in its time constraints, and Cadle's request to transfer is clearly outside the specified 90-day time period. Cadle has not requested any extension of that time period, nor has it provided or sought leave to provide any response to Ms. Kuehn's argument on this issue. For this reason alone, the motion to transfer is due to be denied. See e.g., In re Classic Auto Painting & Bodyworks, Inc., 1993 WL 13005113 (Bankr. S.D. Ga. Dec. 15, 1993).

Cadle's motion is also due to be denied for a second reason. As Ms. Kuehn properly states, the Trustee over her bankruptcy estate has abandoned all property, including this lawsuit, and the property has reverted back to Ms. Kuehn. On January 18, 2006, the Trustee filed a Report of No Distribution with the Bankruptcy Court, stating that after diligent inquiry, "there is no property available for distribution from the estate . . . ," and that "the estate has been fully administered." See Doc. 35, Ex. A. The Trustee also sought leave to be discharged from any further duties. Id. According to Ms. Kuehn, the

effect of the Trustee's Report is threefold: (1) her estate has been "fully administered" and therefore this lawsuit will never impact the distribution of assets to creditors; (2) because it does not impact the distribution of assets, this lawsuit cannot be "related to" the bankruptcy action; and (3) the Trustee knowingly and intentionally abandoned this lawsuit as an asset of the estate.  As such, there is no basis to remove this action to the Bankruptcy Court, and there is no Trustee available to take over this case.

Again, Ms. Kuehn is correct.  Under 11 U.S.C. § 554, a trustee may abandon "any property of the estate that is burdensome to the estate or is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  Property not otherwise administered by the trustee is deemed abandoned to the debtor.  11 U.S.C. § 554(c); see also In re Pilz Compact Disc, Inc., 229 B.R. 630, 638 (Bankr. E.D. Pa. 1999) ("Abandonment . . . removes property from the bankruptcy estate and returns the property to the debtor as though no bankruptcy occurred.") (internal citations omitted).  In this case, it is clear that Ms. Kuehn notified her Trustee of the existence of this lawsuit through the filing of her amended schedule of personal property, and that the Trustee abandoned it at the time he issued his report stating that the estate has been fully administered.  Thus, this lawsuit reverted back to Ms. Kuehn and the Bankruptcy Court no longer has any jurisdiction over it.[3]  See In re VonGrabe, 332 B.R. 40, 43-44 (Bankr. M.D. Fla. 2005) (court cannot

---

[3] Ms. Kuehn also claims that Cadle has failed to satisfy the standard for removal of civil actions to bankruptcy court.  Because the Court has already found two separate procedural grounds for denying Cadle's motion, it need not reach this third argument.

8

exercise "related to" jurisdiction over prepetition causes of action that Chapter 7 trustee has abandoned). Thus, Cadle's motion to transfer is due to be denied.

### B.     *Motion to Dismiss for Failure to Sue Proper Party.*

Cadle next seeks to have Ms. Kuehn's Amended Complaint dismissed on the grounds that she has sued the wrong party. Cadle asserts that this action can only be brought against Cadleway Properties, and since Ms. Kuehn has already dismissed that entity from this lawsuit, her claims cannot go forward.

####     1.     Standard of Review

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate." Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv. 400 F.2d 465, 471 (5th Cir. 1968). Thus, if a complaint "shows that the Plaintiff is entitled to any relief that the Court can grant, regardless of whether it asks for the proper relief," it is sufficiently plead. Dotschay v. Nat. Mut. Ins. Co., 246 F.2d 221 (5th Cir. 1957). As the Supreme Court declared in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." See also Cook & Nichol, Inc. v. The Plimsoll Club, 451 F.2d 505 (5th Cir. 1971). The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." Conley, 355 U.S. at 47. Instead, all that is required is that the claimant set forth a "short and plain statement of the claim" sufficient to give the

defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. However, "while notice pleading may not require that the pleader allege a 'specific fact' to cover each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations omitted).

In addition, when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court is limited to a review of the allegations set forth on the face of the complaint itself, as well as any attached and/or incorporated documents which are central to the plaintiff's claim. Brooks v. Blue Cross & Blue Shield of Florida, 116 F.3d 1364, 1369 (11th Cir. 1997). Review of such incorporated documents will not convert a motion to dismiss into a motion for summary judgment. Id., see also Harris v. Ivax Corp., 182 F.3d 799, 802 n. 2 (11th Cir.1999).

### 2. The Plaintiff Has Stated a Claim Against Defendant Cadle

The gravaman of Ms. Kuehn's entire case is that Cadle, as the third party debt collector on her Amicus credit card account, sent her a false and misleading collection letter and notice on January 13, 2004, in violation of both the TILA and FDCPA. The parties do not dispute the contents of the letter, which is attached as Exhibit A and incorporated into the Amended Complaint. However, Cadle challenges Ms. Kuehn's Amended Complaint on the grounds that the letter in question nowhere mentions or references Cadle. It refers solely to Cadleway Properties, Inc., the original party defendant

10

who Ms. Kuehn has dismissed from this case. The letterhead lists Cadleway Properties, Inc. at the top, and mentions Cadleway Properties, Inc. in the first sentence of the letter, as well as throughout the notice requesting Ms. Kuehn's personal information. Cadle is nowhere mentioned. Am. Complt., Ex. A. According to Cadle, the fact that the letter does not mention Cadle contradicts all of the allegations in the Amended Complaint that Cadle was the debt collector and/or violated either the TILA or FDPCA.

Cadle is not entirely correct. A review of the Amended Complaint clearly demonstrates that Ms. Kuehn's legal theory is that Cadle and Cadleway Properties, Inc. are closely related entities, owned by the same person, located at the same business address, and engaged in similar debt collection activities. Ms. Kuehn further alleges in her Amended Complaint that Cadleway Properties, Inc. purchased her Amicus account, but that Cadle itself is conducting the debt collection activities at issue, and sent the letter on behalf of Cadleway Properties. Am. Complt., ¶¶ 5, 20, 23. In fact, on the very first page of her Amended Complaint, Ms. Kuehn states that "[u]pon information and belief, Cadleway Properties, Inc. performed no actual servicing or debt collection activities against Plaintiff or the class. Thus, Plaintiff hereby substitutes The Cadle Company . . . as the proper Defendant debt collector that performed all the acts complained of herein." Id., p. 1. There is also no question that Ms. Kuehn has properly set forth all of the elements for claims under the TILA and FDCPA.

Given these allegations, the Court is not convinced that there is an inherent, unsurmountable conflict between the letter and Ms. Kuehn's Amended Complaint. It is

entirely possible that Ms. Kuehn will be able to prove that Cadle sent the letter using Cadleway Properties' letterhead, and that Cadle is either an agent of Cadleway, or the entities are one and the same. These issues, however, including the extent of Cadle's involvement, the identity of the party who actually sent the January 14, 2004 letter, and whether or not Cadle or Cadleway Properties, Inc. was the true debt collector, are disputed issues of fact which can only be resolved after discovery, and most likely through the filing of motions for summary judgment.[4]  At this stage in the litigation, Ms. Kuehn has pled sufficient facts to provide Cadle with "fair notice of what [her] claim is and the grounds upon which it rests." Fed.R.Civ.P. 8(a)(2); Conley, 355 U.S. at 47. In other words, under the Federal "liberal notice" pleading standard, Ms. Kuehn has sufficiently alleged claims under the TILA and FDCPA against Cadle. This is enough to survive a motion to dismiss.[5]

### 3. The Amended Complaint Relates Back to The Cadle Company

Cadle next seeks to have all claims against it dismissed on the grounds that they are time-barred. Both the TILA and FDCPA contain one year limitations periods, which run from the date the collection letter is mailed. See 15 U.S.C. § 1640(e) (one year limitations period for claims under the TILA); 15 U.S.C. § 1692(k) (one year limitations period for claims under the FDCPA); see also Maloy v. Phillips, 64 F.3d 64, 68 (11th Cir. 1995).

---

[4] For the reasons set forth in Ms. Kuehn's opposition, the Court rejects the two decisions cited by Cadle in support of its motion to dismiss. See Doc. 22 at 2-4.

[5] Ms. Kuehn asserted numerous facts and submitted two exhibits with her Opposition in an attempt to prove that Cadle is the actual debt collector for her credit card account. See Doc. 22 at 4-5. These facts, however, are nowhere alleged in her Amended Complaint, and the exhibits are not attached to or incorporated in that pleading. Therefore, they are outside the four corners of the Amended Complaint and cannot be considered by the Court.

Because the letter at issue was mailed on January 13, 2004, and Ms. Kuehn did not amend her complaint to include Cadle until April 25, 2005, Cadle contends that her claims are outside the limitations period and must be dismissed. In response, Ms. Kuehn argues that her Amended Complaint relates back to her original complaint, which was well within the one-year limitations period for both Acts, and therefore her claims against Cadle can go forward.

The standard for relation back of amendments is set forth in Rule 15(c) of the Federal Rules of Civil Procedure. Rule 15(c) provides, in relevant part, that:

> An amendment of a pleading relates back to the date of the original pleading when
>
> . . . .
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed.R.Civ.P. 15(c)(2), (3).  See also Powers v. Graff, 148 F.3d 1223, 1225 (11th Cir. 1998). The relation back provisions of Rule 15 are liberally applied. Id. at 1225-26.

There is no dispute that the claims set forth in the Amended Complaint arise from the same conduct, transaction or occurrence as those set forth in the original complaint - they are virtually identical save for the substitution of Cadle as the alleged wrongdoer. Thus, the question is whether the requirements of Rule 15(c)(3) have been satisfied. The Court finds that they have.

The first requirement under Rule 15(c)(3) is that the substituted party be on notice of the lawsuit or the misidentification of the defendant party within the 120 day period for service of process under Rule 4(m). See Hunt v. Department of Air Force, 29 F.3d 583, 588 (11th Cir. 1994). Ms. Kuehn alleges throughout her Amended Complaint that Cadle and Cadleway Properties are closely related and intertwined entities - they are owned by the same person, operate out of the same offices, and perform the same sort of debt collection services. Ms. Kuehn also alleges that Cadleway Properties purchased her Amicus account, but that Cadle performed the debt collection services. Cadle has not challenged any of these allegations in its motion to dismiss. Because Cadle and Cadleway Properties share an identify of interest, notice to Cadleway Properties can be imputed onto Cadle. See, e.g., Jacobsen v. Osborne, 133 F.3d 315, 320 (5th Cir. 1998) (notice can be imputed where there is sufficient identity of interests between the original and new parties); Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 12 (1st Cir. 1990) (recognizing that an amendment to add a party as a defendant will relate back if the named defendant and party have an identify of interest); Bowden v. Wal-Mart Stores, Inc., 124 F. Supp.2d 1228, 1241-42 (M.D. Ala. 2000) (where two separate and distinct legal entities had shared members

of their respective board of directors, there is sufficient interrelation to permit imputing notice and relation back of amended complaint); Brink v. First Credit Resources, 57 F. Supp.2d 848, 853 (D. Ariz. 1999) ("If the proposed new defendants have an identify of interest with the named defendant, notice will be imputed to the former."). See also McCulley v. Allstates Technical Services, 2005 WL 1475314, *17 (S.D. Ala. Jun. 21, 2005) (evidence of intertwined nature of the new and old party defendants demonstrates that new party was on notice of lawsuit within 120-day time period). Accordingly, and because Cadle does not argue that this requirement of Rule 15(c)(3) was not met, the Court finds that sufficient and timely notice exists with respect to Cadle.

The second requirement under Rule 15(c)(3) is that Cadle will not suffer any unfair prejudice from its inclusion in the Amended Complaint. The notion of unfair prejudice turns on a newly-added defendant's ability to adequately maintain a defense against the complaint. See Fed.R.Civ.P. 15(c)(3)(ii). Cadle has not raised any unfair prejudice argument in its motion to dismiss, and the fact that Cadle was clearly on notice of the existence of this lawsuit from its inception, that the claims are virtually identical between the two complaints, and that Cadle and Cadleway Properties are closely related intertwined entities demonstrate that Cadle will have no difficult preparing its defense in this case. See McCulley, 2005 WL 1475314 at * 17.

For these same reasons, it is equally clear that the third requirement of Rule 15(c)(3) has been satisfied: that Cadle knew or should have known that but for Ms. Kuehn's mistake in first suing Cadleway Properties, this action would have been brought against

Cadle from the outset. See Bowden, 124 F. Supp. 2d at 1241-42 (the notice and "should have known" requirements are complimentary). And again, Cadle has not raised this requirement in its motion to dismiss.

Instead, Cadle rests its entire argument on this issue on the provision in Rule 15(c)(3) that the misidentification of the party-defendant be due to a mistake, and not from lack of knowledge of the existence of the substituted party. Indeed, the purpose of Rule 15(c)(3) is to permit amended complaints to relate back to original filings when the amended complaint is correcting a mistake about the identity of the defendant. Powers, 148 F.3d at 1226. However, that is exactly what has happened here. Ms. Kuehn mistakenly sued Cadleway Properties based on her initial belief that the January 14, 2004 letter identified the correct third party debt collector. Upon realizing her mistake, she immediately amended her complaint to sue the correct party. This is not a situation where Ms. Kuehn knew of Cadle from the outset and deliberately chose not to sue it. Cf. Nobles v. Rural Community Ins. Services, 303 F. Supp.2d 1279, 1286-87 (M.D. Ala. 2004); Wells v. HBO & Co., 813 F. Supp. 1561, 1567 (N.D. Ga. 1992). Nor is this a situation where Ms. Kuehn sought to avoid expiration of the limitations period by filing suit against the first party she could find, in the hopes of later fixing any errors. Given that the body of Ms. Kuehn's Amended Complaint indicates that she sought to impose liability on the entity responsible for sending her the January 13, 2004 letter, this Court concludes that when she filed her original complaint, she intended and thought she was suing that entity. Instead, Ms. Kuehn mistakenly chose the wrong closely-related entity first. See e.g., Mathai v.

Catholic Health Initiatives, Inc., 2000 WL 1716747 (E.D. Pa. Nov. 16, 2000) (plaintiff allowed to amend complaint to sue correct employer where, after discovery, plaintiff discovered that employer was wholly owned subsidiary of another). And, if Ms. Kuehn's allegations in her Amended Complaint concerning Cadle prove true, then Ms. Kuehn's mistake was due to Cadle's own attempts to hide behind another closely related company's letterhead. Cadle should not be allowed to benefit from its own deception.[6]

## Conclusion

The Federal Rules of Civil Procedure should be liberally construed to promote the resolution of claims based upon their merits. This principle holds with equal strength with respect to Rule 15. See Forman v. Davis, 371 U.S. 178, 182 (1962). But even if the Rules were not so flexible, the Court would be venerating form over substance not to recognize the interrelationship between Cadle and Cadleway Properties. The Court finds that all of the prerequisites of Rule 15(c) have been met. Therefore, Ms. Kuehn's Amended Complaint relates back to its original timely filed complaint. Accordingly, upon due consideration, the Defendant's Motion to Dismiss (Doc. 20) is DENIED, and the Defendant's Motion to Transfer (Doc. 34) is DENIED.

---

[6] The Court agrees with Ms. Kuehn's analysis of the decisions cited by Cadle on this issue. For example, Wayne v. Jarvis, 197 F.3d 1098 (11th Cir. 1999) is inapposite because it involves amendments to replace fictitious "John Doe" parties with specifically-named defendants. See Wayne, 197 F.3d at 1102. Similarly, in Eison v. McCoy, 146 F.3d 468 (7th Cir. 1998), the plaintiff sought to avoid the expiration of the limitations period by simply filing suit against various unknown defendants using their nicknames. Eison, 146 F.3d at 473. The Seventh Circuit Court of Appeals refused to allow a later amendment to add the defendants' proper names. Id.. Clearly neither situation applies in this case.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 30th day of May, 2006.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record