UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**BONNIE E. KUEHN, individually and
on behalf of all similarly situated,**

**Plaintiff,**

**vs.**                                              **Case No. 5:04-CV-432-OC-10GRJ**

**THE CADLE COMPANY,**                     **CLASS ACTION REPRESENTATION**

**Defendant.**

---

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR CLASS CERTIFICATION**

**I.     BACKGROUND**

Plaintiff Bonnie E. Kuehn, by counsel, respectfully submits this motion and memorandum in support of her Motion for Class Certification (the "Motion") pursuant to Rules 23(a), 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure (the "Rules"), seeking certification of this action as a class action.

This is a consumer class action brought on behalf of all persons in the state of Florida who, during the one year prior to the filing of this action, received a letter from The Cadle Company, or employees thereof, which included an IRS W-9 request for Taxpayer Identification Number, in substantially the same form as Exhibit A attached hereto.   Excluded from the class are letters sent on debts owned by The Cadle Company itself.   Plaintiff asserts claims under the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") for declaratory relief, statutory damages, costs and attorneys' fees, as well as an injunction forcing Defendant to stop its illegal practices.

Plaintiff filed her case on September 22, 2004, against Cadleway Properties, Inc. ("Cadleway"), the owner of the debt. Cadleway filed its Motion to Dismiss, Compel Arbitration and for Sanctions on November 2, 2004. After limited discovery on Cadleway, Plaintiff determined that Cadleway has no employees and that the dunning collection letter at issue was actually sent by employees of The Cadle Company. On April 22, 2005, Plaintiff filed her First Amended Class Action Complaint substituting The Cadle Company for Cadleway Properties, Inc., as the proper Defendant.

In essence, the Complaint alleges that The Cadle Company is in violation of the Fair Debt Collection Practices Act "FDCPA" for false representations in its collection letter and improper association with the Federal Government.

## II.    FACTS

The facts in this case are simple and straightforward. It is undisputed that Plaintiff's debt and the debts of the class members are owned by Cadleway Properties or other corporate entities owned and controlled by Daniel Cadle. However, the vast majority of Cadle-affiliated entities are shell corporations without any corporate offices, employees, computers, databases, etc. The Cadle affiliates simply own the paper debts. It is therefore, The Cadle Company that performs the debt collection tasks for the Cadle-affiliated entities. (See Deposition of Daniel C. Cadle attached hereto as Exhibit B at 16). The Cadle Company employs account officers to collect on the debts owned by its affiliated companies. (Cadle Depo at 24). The Cadle Company operates one central database in its Ohio headquarters that houses all accounts owned by all Cadle entities. (Cadle Depo at 7). The Cadle Company automatically generates collection letters from the single database and computer software operated by The Cadle Company. (Cadle Depo at 8).

Each account officer has numerous accounts under their control and he or she works on accounts owned by various Cadle entities in a given day.  (Cadle Depo at 24).  These account officers are paid directly by The Cadle Company.  (Cadle Depo at 12, 13).  The Cadle Company charges the Cadle affiliated entities for work done on their behalf by employees of The Cadle Company.  However, no employees are paid directly from any Cadle affiliate.  (Cadle Depo at 12, 13, 18).

The Cadle Company's central database computer system generates its collection letters. Cadle refers to the letter at issue in this case as its "Hello Letter."  (Cadle Depo at 39).  The Hello Letter is the first correspondence Cadle has with the debtor after a Cadle entity has purchased the debt.  (Cadle Depo at 39).  The Hello Letter tells the debtor that the account has been purchased by a Cadle affiliated entity and gives the debtor a new account number to use when dealing the The Cadle Company in the future.  (Cadle Depo at 36)

Attached to Cadle's Hello Letter is a W-9 form generated by the IRS.  The Hello Letter references the W-9 and the IRS as follows:

> Also enclosed is an IRS-generated W-9 to certify your Tax Identification Number (TIN).  For individuals, this is your Social Security Number.  Please complete this form indicating the above account number, and sign and return it to us as soon as possible. You are subject to a $50 penalty imposed by the IRS under 26 U.S.C. 6723 if you fail to furnish a TIN.

Plaintiff asserts that Defendant's Hello Letter violates the FDCPA in three ways. First, the Hello Letter falsely implies that the IRS, an arm of the Federal Government, has been or is going to be involved in the collection of the debt at issue in violation of § 1692(e)(9).

Second, this language violates section 1692(e)(10), in that the W-9 form is used to deceptively obtain information from the consumer.  Because at the timing of the Hello Letter,

3

Cadle does not know whether the debt will be paid in full, in part, or at all when the Hello Letter is issued. Therefore, the only reason for issuing a W-9 at such an early date is to obtain additional information on the consumer, which is a violation of the FDCPA.

Third, the Hello Letter makes a false representation in violation of § 1692(e)(10), because no fine will be issued by the IRS for the consumer's failure to return the W-9 to Cadle if the consumer does not fill it out and return it "as soon as possible." Indeed, theW-9 itself states that it is within the power of the IRS to charge or waive such fees. A W-9 form is only necessary if the debt is "forgiven" rather than paid. The Cadle Company is without the authority to determine whether the IRS will issue any penalties. Thus, it is improper for Cadle to assert that the account holder will be "subject to a $50 penalty imposed by the IRS if you fail to furnish a TIN". In any event, at the time Defendant sends this form Hello Letter no debt has been forgiven and there is absolutely no basis for issuing the W-9 at that time.

Under the applicable least sophisticated consumer test, see Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991), the Hello Letter improperly implies a connection with the Internal Revenue Service, and falsely implies that failing to fill it out and return it will result in a fine by the IRS. A collection letter purporting to be connected with the IRS violates the FDCPA as constituting a "written communication which simulates or is falsely represented to be a document authorized, issued or approved by any court. official, or agency of the United States, or any State, or which creates a false impression as to its source, authorization, or approval." 15 U.S.C. § 1692e(9).

## III.  ARGUMENT

### A.  General Legal Standards Governing Class Certification

For a suit to be maintained as a class action under Rule 23, Plaintiff must allege facts establishing each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

See Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 246 (3d Cir.), cert. denied, 421 U.S. 1011 (1975).

Plaintiff also alleges that this action qualifies for class treatment under two of the subdivisions of Rule 23(b).  Under Rule 23(b)(2), a class action will be appropriate where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Under Rule 23(b)(3), a class action will be appropriate where "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Plaintiff bears the initial burden of advancing reasons why a putative class action meets the requirements of Rule 23.  However, Plaintiff's burden is not a heavy one.  See Anderson v. City of Albuquerque, 690 F.2d 796, 799 (10th Cir. 1982); Paxton v. Union Nat'l Bank, 688 F.2d 552, 562 (8th Cir. 1982).  Once a plaintiff has demonstrated a preliminary legal showing that the

requirements of Rule 23 have been met, the burden of proof is upon the defendant to demonstrate otherwise.  2 H. Newberg, <u>Newberg on Class Actions</u> (3d Ed. 1992) ("Newberg") § 7.22 at 7-74 to 7-75.  Provided that a plaintiff's contentions regarding the class issues are based upon a reasonable foundation, the court should not deny certification because of a defendant's challenge.  See <u>Sollenbarger v. Mountain States Tel. & Tel. Co.</u>, 121 F.R.D. 417 (D.N.M. 1988); <u>In re Industrial Gas Antitrust Litig.</u>, 100 F.R.D. 280 (N.D. Ill. 1983); <u>Kuck v. Berkey Photo, Inc.</u>, 81 F.R.D. 736 (S.D.N.Y. 1979).

**B.      The Proposed Class Satisfies the Requirements of Rule 23(a)**

The Supreme Court has noted that "[c]lass actions serve an important function in our system of civil justice." <u>Gulf Oil Co. v. Bernard</u>, 452 U.S. 89, 99 (1981).  The Court has also recognized that the class action procedure is necessary for private rights of action to be initiated. <u>Deposit Guar. Nat'l Bank v. Roper</u>, 445 U.S. 326, <u>reh'g</u>. <u>denied</u>, 446 U.S. 947 (1980).  As stated in <u>Roper</u>, class actions serve an important function in our system of civil justice because they permit plaintiffs to "vindicat[e] the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost." <u>Id.</u> at 338.

The determinations called for by Rule 23 are questions addressed to the sound discretion of the district court. <u>Gulf Oil Co.</u>, 452 U.S. at 100.  A decision to grant class certification is not a final order; it may be altered or amended as the case progresses towards resolution on the merits. Fed.R.Civ.P. 23(c)(1); <u>In re School Asbestos Litig.</u>, 789 F.2d 996, 1011 (3d Cir. 1986); 7B C. Wright & A. Miller, *Federal Practice and Procedure* § 1785, at 128 (1986) ("Wright & Miller").  Moreover, the Third Circuit has adopted a liberal construction of Rule 23. <u>See, e.g.</u>, <u>Eisenberg v. Gagnon</u>, 766 F.2d 770, 785 (3d Cir.), <u>cert. denied</u> *sub nom* <u>Wasserstrom v. Eisenberg</u>, 474 U.S.

6

946 (1985); Kahan v. Rosenstiel, 424 F.2d 161 (3d Cir.), cert. denied, 398 U.S. 950 (1970).

Therefore, in a close case, the court should find the prerequisites to class certification

established. Eisenberg, 766 F.2d at 785; Spark v. MBNA Corporation, 178 F.R.D. 431 (D. Del.

1998).

The focus is simply whether the prerequisites of Rule 23 have been met. Dawes v. The

Philadelphia Gas Commission, 421 F. Supp. 806, 813 (E.D. Pa. 1976). In determining whether

an action may be maintained as a class action, the issue is "merely whether the representative

plaintiffs have demonstrated the probability of the existence of a sufficient number of persons

inclined and similarly situated." The court is not to conduct an exploration of the merits when

deciding upon certification of a class. Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 177-78

(1974); Kahan, 424 F.2d at 168; Spark v. MBNA Corporation, supra; Chestnut Fleet Rentals,

Inc. v. Hertz Corp., 72 F.R.D. 541, 543 (E.D. Pa. 1976). Moreover, since class determination is

made at the pleading stage of the action, the substantive allegations in the complaint are accepted

as true for purposes of the class motion. Shelter Realty Corp. v. Allied Maintenance Corp., 574

F.2d 656, 661 n.15 (2d Cir. 1978); Blackie v. Barrack, 524 F.2d 891, 901 n.16 (9th Cir. 1975),

cert. denied, 429 U.S. 816 (1976); Vine v. Beneficial Fin. Co., 374 F.2d 627, 632-33 (2d Cir.),

cert. denied, 389 U.S. 970 (1967), and if any doubt exists, "any error, if there is to be one, should

be committed in favor of allowing the class action." Hoffman Elec., Inc. v. Emerson Elec. Co.,

754 F. Supp. 1070, 1075 (W. D. Pa. 1991). See also Moskowitz v. Lopp, 128 F.R.D. 624, 628

(E.D. Pa. 1989); Ettinger v. Merrill Lynch Pierce, Fenner & Smith, Inc., 122 F.R.D. 177, 179

(E.D. Pa. 1988).

Further, judicial economy requires that this action proceed through the class action

vehicle. The Plaintiff's and the Class members' only alternative to proceeding as a class action is

to file thousands of individual claims.  To do so would be time consuming and redundant, as each Plaintiff would be required to conduct discovery into Defendants' business practices to prove exactly the same allegations and proffer exactly the same evidence.  Each Plaintiff would then be required to brief and argue the same questions of law thousands of times.

This action should be certified as a class action because, as discussed below, all of the requirements of Rule 23(a) have been met.

### 1.  The Class is so numerous that joinder of all members is impracticable.

Rule 23(a)(1) requires that the proponent of a class action demonstrate that "the class is so numerous that joinder of all members is impracticable."  Fed.R.Civ.P. 23(a)(1).  The Rule does not require that joinder be impossible; rather, joinder of all members is impracticable when the procedure would be "inefficient, costly, time-consuming, and probably confusing."  Ardrey v. Federal Kemper Ins. Co., 142 F.R.D. 105, 111 (E.D. Pa. 1992).  This Court may make "common sense assumptions" in order to support the finding of numerosity.  Snider v. Upjohn Co., 115 F.R.D. 536, 539 (E.D. Pa. 1987) (quoting Wolgin v. Magic Marker Corp., 82 F.R.D. 168, 171 (E.D. Pa. 1979)).  Moreover, precise enumeration of the members of a class is not necessary for the action to proceed as a class action.  See, e.g., Epstein v. Moore, [1988-89 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 93, 957 at 90,442 (D.N.J. 1988).  It is permissible to estimate class size.  In re ORFA Sec. Litig., 654 F. Supp. 1449, 1464 (D.N.J. 1987).

In applying this rule, it has consistently been held that joinder is impracticable where the class is composed of hundreds of potential claimants; indeed, impracticability of joinder has often been found where the class is composed of less than 100 members.  See, e.g., Eisenberg, 766 F.2d at 785-86 (90 class members meet numerosity requirement); Weiss v. York Hospital, 745 F.2d 786, 808 (3d Cir. 1984), cert. denied, 470 U.S. 1060 (1985) (92 class members meet

numerosity requirement); (Korn v. Franchard Corp., 456 F.2d 1206, 1209 (2d Cir. 1972) (70 members); Leyva v. Buley, 125 F.R.D. 512 (E.D. Wash. 1989) (joinder of 50 migrant workers impracticable); Basile v. Merrill Lynch Pierce, Fenner & Smith, Inc., 105 F.R.D. 506 (S.D. Ohio 1985) (23 members).

Plaintiff seeks certification of a class of all persons in the state of Florida who during the one year prior to the filing of this action, received a letter from Defendant in substantially the same form as Exhibit A to Plaintiff's Complaint. As to the exact number of Class members, Defendants possess documents which will establish that figure precisely if liability is determined.

During his deposition, Daniel C. Cadle testified that his database of accounts that is used to generate the Hello Letter includes in excess of 100,000 accounts (Cadle Depo 11). Thus, nationally, The Cadle Company has issued such a substantial number of Hello Letters that numerosity could not be questioned. Because Plaintiff's amended Complaint limits the class to Florida Plaintiffs, the question becomes whether there are a sufficient number of debtors in Florida to meet the numerosity requirement.

Evidence provided early in this case indicates the numerosity can be easily established. Interestingly, Plaintiff Kuehn worked for Amicus Bank in its Maitland Florida corporate offices from September 2001 to September 2002. Plaintiff therefore has personal knowledge of the inner workings of Amicus Bank. Amicus Bank operated in Florida doing business as "Marketplace Bank." The majority of bank branches were located in grocery stores." (Kuehn Affidavit at Paragraph 3, Exhibit C). Therefore, the majority of accounts were issued to Florida consumers. Likewise, the Amicus Bank credit cards were also largely placed with Florida consumers.

9

Cadle affiliate, Cadleway Properties, Inc., purchased several thousand Amicus Bank accounts, including Plaintiffs from Matrix Bancorp.   (See Exhibit D, Schedule of Accounts). Although Cadle provided the list of accounts, all the information on the addresses of the consumers was redacted from the documents under a privacy argument.   However, for the purpose of determining class certification, it is obvious that several thousand Amicus Bank credit card accounts were purchased.   This factor, combined with Plaintiff's testimony regarding the vast majority of Amicus customers, is sufficient evidence of numerosity.   Also, Mr. Cadle testified that the Hello Letter that is the subject of this litigation is sent to all new Cadle customers.   (Cadle Depo at 39).   When asked whether there were 1,000 Cadle account currently opened in Florida, Mr. Cadle testified that "it would not surprise [him]."   (Cadle Depo at 41).

Accordingly, it is indisputable that the numerosity requirement is easily satisfied as to the Class.

## 2.  There are questions of law and fact common to the Class

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Fed.R.Civ.P. 23 (a)(2).   This "threshold of commonality is not high." In re School Asbestos Litig., 789 F.2d at 1010 (quoting Jenkins v. Raymark Indus., Inc., 782 F.2d 468 (5th Cir. 1986), cert. denied, 479 U.S. 852 (1987)).   The rule does not require that all questions be common or even that common questions predominate. Hummel v. Brennan, 83 F.R.D. 141, 145 (E.D. Pa. 1979); Kuhn v. Philadelphia Electric Co., 80 F.R.D. 681, 684 (E.D. Pa. 1978).   All class members need not share identical claims; "factual differences among the claims of the putative class members do not defeat certification." Baby Neal v. Casey, 43 F.3d 48, 56 (3d. Cir. 1994).   Indeed, a single common question is sufficient to satisfy the requirements of Rule

23(a)(2).  In re Prudential Insurance Company America Sales Practice Litigation Agent Actions,
148 F.3d 283, 310 (3d Cir. 1998); Baby Neal v. Casey, 43 F.3d at 56.

A common question is one which "arises from 'a common nucleus of operative facts'
regardless of whether 'the underlying facts fluctuate over the class period and vary as to
individual claimants.' "   In re School Asbestos Litig., 104 F.R.D. at 429; In re Corrugated
Container Antitrust Litig., 80 F.R.D. 244, 250 (S.D. Tex. 1978).

Courts have typically found a common nucleus of operative facts where, as in the present
action, the defendant engaged in standardized conduct toward putative class members.  Keele v.
Wexler, 1998 U.S. App. LEXIS 15029 (7th Cir. 1998) (class certified in FDCPA action on
behalf of all Colorado residents who received debt collection letters from defendant); Wilborn v.
Dun & Bradstreet Corporation, 1998 U.S. Dist. LEXIS 12618 (N.D. Ill. 1998) (FDCPA class
certified regarding form collection letter); West v. Costen, 558 F. Supp. 564 (W. D. Va. 1983)
(FDCPA class certified regarding alleged failure to provide required "validation" notices).  See
also Prudential, 148 F.3d at 309-310 (Prudential's orchestrated sales presentations, the plaintiffs'
common legal theories, Prudential's common defenses, and other common issues undoubtedly
satisfy the commonality and predominance requirements); Chandler v. Southwest Jeep-Eagle,
162 F.R.D. 302, 308 (N.D. Ill. 1995) (common nucleus of operative facts where defendants
engaged in standardized conduct toward members of the proposed class); Heartland
Communications v. Sprint Corp., 161 F.R.D. 111 (D. Kan. 1995) (class certification granted
where the contracts signed by all proposed class members contained virtually the same provision
as that challenged by the named class representative).

Moreover, it is well established that the presence of some individualized issues does not
overshadow the common nucleus of operative fact presented when the defendant has engaged in

11

standardized conduct toward the Class. See Prudential, *supra* (individual damages do not undermine predominance of common issues); Dawes, 421 F. Supp. at 814 (presence of individual damage claims does not justify denial of class treatment of common issues); Heartland Communications, 161 F.R.D. at 114-15 (minor differences in contracts signed by class members did not suffice to preclude a finding of commonality).

This action is appropriate for class certification because, as set forth in the Complaint, there are numerous questions of fact and law common to the Class in that all members received the same form collection letter. Each member of the proposed Class is a victim of Defendant's (1) false and misleading representations regarding fines imposed by the IRS, (2) attempt to falsely obtain information from them through the use of an attached IRS W-9 Form, and (3) improper affiliation with the Government through the attachment of an IRS W-9 form.

Given the presence of the common questions raised by the form letters, it is indisputable that Rule 23(a)(2)'s requirement for the existence of common questions of fact or law is satisfied.

### 3. The claims of the representative parties are typical of the claims of the Class.

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims . . . of the class." Fed.R.Civ.P. 23(a)(3). Rule 23(a)(3) and the adequacy of representation requirement set forth in subsection (a)(4), are designed to assure that the interests of unnamed class members will be adequately protected by the named class representatives. See, e.g., General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982); Bogosian v. Gulf Oil Corp., 561 F.2d 434, 449 (3d Cir. 1977), cert. denied, 434 U.S. 1086 (1978); In re School Asbestos Litig., 104 F.R.D. at 429-30.

The threshold for establishing typicality is low. Typicality does not require that the claims of the class members be identical. <u>Eisenberg</u>, 766 F.2d at 786. "Rule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be <u>common</u> to the class . . . ." <u>Hassine v. Jeffes</u>, 846 F.2d 169, 177 (3d Cir. 1988) (emphasis in original). The measure of whether a plaintiff's claims are typical is whether the nature of plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his personal claims he can reasonably be expected to advance the interest of absent class members. <u>See</u>, <u>e.g.</u>, <u>Falcon</u>, 457 U.S. at 156-157; <u>Weiss</u>, 745 F.2d at 809-10 n.36; <u>Scott v. University of Delaware</u>, 601 F.2d 76, 84 (3d Cir.), <u>cert. denied</u>, 444 U.S. 931 (1979).

Under a frequently employed formulation, typicality is demonstrated where the plaintiff can "show that the issues of law or fact he or she shares in common with the class occupy the same degree of centrality to his or her claims as to those of unnamed class members." <u>See Weiss</u>, 745 F.2d at 809-10 n.36 (citing <u>Donaldson v. Pillsbury</u>, 554 F.2d 825 (8th Cir.), <u>cert. denied</u>, 434 U.S. 856 (1977)). Put another way, "[c]laims [are considered] typical when the 'essence' of the allegations concerning liability, and not the particularities, suggest adequate representation of the interests of the proposed class members." <u>In re School Asbestos Litig.</u>, 104 F.R.D. at 430 (citing <u>Piel</u>, 97 F.R.D. at 659); <u>Prudential</u>, 148 F.3d at 311-312.

Where, as here, the Plaintiff alleges a common pattern of wrongdoing, and will present the same evidence (based on the same legal theories) to support both her claims and the claims of the class members, courts have held the typicality requirement to be satisfied, notwithstanding factual variances in the position of each class member. Federal Courts have routinely certified FDCPA class actions when the plaintiff and the class members received the same form collection

13

letter alleged to violate the same provision(s) of the FDCPA. See, e.g., Seawell v. Universal Fidelity Corp., 235 F.R.D. 64 (E.D. Pa. 2006) (certifying FDCPA action challenging form collection letters for implying affiliation with government); Keele v. Wexler, 149 F.3d 589 (7th Cir.1998) (holding that typicality requirement was satisfied where defendant mailed same form letter to all class members); Talbott v. GC Serv. Ltd. P'ship, 191 F.R.D. 99 (W.D.Va.2000) (certifying class because plaintiff and all proposed class members received the same letter,); Vines v. Sands, 188 F.R.D. 302 (N.D.Ill.1999) (finding certification appropriate because each class member in the proposed class received the same letter); Wilborn v. Dun & Bradstreet Corp., 180 F.R.D. 347 (N.D.Ill.1998) (same); D'Alauro v. GC Serv. Ltd. P'ship, 168 F.R.D. 451, 456 (E.D.N.Y.1996) (certifying class action where all proposed class members received each of the two identical collection letters); Carr v. Trans Union Corp., 1995 WL 20865 (E.D.Pa.1995) (certifying class action where only one form letter was sent to all proposed class members); Vaughn v. CSC Credit Serv., Inc., 1994 WL 449247 (N.D.Ill.1994) (certifying class of all persons who received one particular form letter).

The representative Plaintiff is a typical victim of Defendant's improper debt collection practices. Plaintiff's claims arise out of the same course of conduct, i.e., the use of form collection letters, and are based on the same legal theories as those of the Class members. For example, whether sending a W-9 form with its collection letters constitutes a violation of § 1692(a)(9) because it implies an association with the government, is an issue typical to Plaintiff and the class. Likewise, whether Cadle uses the W-9 form to collect information on its consumer debtors, and whether its threat of an IRS penalty is a false representation, are issues that will either prevail or fall for Plaintiff as well as the Class. This case has virtually no individual issues to be determined. The essence of each putative class member's claim is precisely the same.

14

Accordingly, the common issues necessarily share "the same degree of centrality," Weiss, 745 F.2d at 809-10 n.36, to the named representatives' claims such that in litigating the liability issues, the representative Plaintiff can reasonably be expected to advance the interests of all Class members toward a favorable determination with respect to each such issue. The claims of the representative Plaintiff are therefore typical of the claims of the Class.

### 4. The Plaintiff will fairly and adequately protect the interests of the Class.

The requirement of Rule 23(a)(4) is met if it appears that (1) Plaintiff's attorneys are qualified, experienced and generally able to conduct the litigation and (2) Plaintiff's' interests are not antagonistic to those of the class they seek to represent. See, e.g., Prudential, 148 F.3d at 312; Lewis v. Curtis, 671 F.2d 779, 788 (3d Cir.), cert. denied, 459 U.S. 880 (1982); Bogosian, 561 F.2d at 449; Wetzel, 508 F.2d at 247.

The existence of the elements of adequate representation are presumed and "[t]he burden is on the defendant to demonstrate that the representation will be inadequate." In re School Asbestos Litig., 104 F.R.D. at 430 (citing Lewis, 671 F.2d at 788). As the court explained in Cook v. Rockwell Int'l Corp., 151 F.R.D. 378, 386 (D. Colo. 1993):

> [A]dequate representation presumptions are usually invoked in the absence of contrary evidence by the party opposing the class. On the issue of no conflict with the class, one of the tests for adequate representation, the presumption fairly arises because of the difficulty of proving negative facts. On the issue of professional competence of counsel for the class representative, the presumption fairly arises that all members of the bar in good standing are competent. Finally, on the issue of intent to prosecute the action vigorously, the favorable presumption arises because the test involves future conduct of persons, which cannot fairly be prejudged adversely.
>
> If there are any doubts about adequate representation or potential conflicts, they should be resolved in favor of upholding the class, subject to later possible reconsideration, or subclasses might be created initially.

Id., (quoting 2 *Newberg*, § 7.24 at pp. 7-81, 7-82).

Both prongs of the "adequacy" test are met here.  First, Plaintiff has retained counsel highly experienced in class action litigation to prosecute her claims and those of the Class. (Attached hereto as Exhibit E, is summary of Plaintiff counsels' class action experience).

Second, there is nothing to suggest that the representative Plaintiff has any interest antagonistic to the vigorous pursuit of the Class claims against Defendants.[2]  Plaintiff shares with the class a common interest in establishing that the Hello Letter violates the FDCPA. Unlike many class actions, this case requires almost exclusive examination of Defendant's conduct to determine liability.

Plaintiff is aware of the claims advanced in this matter and is prepared to vigorously pursue this matter on behalf of the class.  (See Affidavit of Bonnie Kuehn attached hereto as Exhibit C).[3]  There are simply no individual issues pertaining to the named Plaintiff that would or could defeat a finding of adequacy.  Accordingly, the representative Plaintiff will adequately represent the interests of the Class.

C.    **The Conditions of Rule 23(b) Have Been Met**

In addition to meeting the prerequisites of Rule 23(a), an action must satisfy at least one of the three conditions of subdivision (b) of Rule 23.  Plaintiff proceeds here under Rule 23(b) (2) and b(3) which provides in pertinent part:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

---

[2]  Because of the difficulty in proving the negative, it is Defendants' burden to prove any antagonism. See Lewis, 671 F.2d at 788.

[3]  Defendant chose not to depose Plaintiff in the discovery stage of this litigation.  Accordingly, her adequacy as a class representative cannot realistically be challenged.

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members . . .

Fed.R.Civ.P. 23(b)(1), (2), (3).

## 1.    Rule 23(B)(2) Certification

Plaintiff's Second Amended Complaint seeks a declaration from this Court regarding the lawfulness of Cadle's Hello Letter.  If this Court declares the letter in violation of the law, then such a determination should benefit all members of the proposed class.  Likewise, if this Court determines that Cadle's letter is entirely proper, Cadle should be protected from further litigation on the issue.  Certification pursuant to Rule 23(b)(2) on Plaintiff's declaratory judgment claim is entirely appropriate.  See, Seawell v. Universal Fidelity Corp., 235 F.R.D. 64 (E.D. Pa. 2006) (certifying declaratory relief claim under (b)(2) and damages under (b)(3).

In determining whether a (b)(2) class can be certified as a class action, Courts look to whether the class is "cohesive" with respect to the liability issues.  This means that the named plaintiff and all class members must have an essentially uniform interest in its determination and none of the named Plaintiff's claims can be characterized by any special or unique factual twits. See In re St. Jude Med., Inc., 425 F.3d 1116 (8th Cir. 2005).  Once the Rule 23(a) criteria are satisfied, two elements must be met under Rule 23(b)(2):  (1) whether the party opposing he class acted on grounds generally applicable to the class; and (2) whether final injunctive or declaratory relief is requested and appropriate.  Fed. R. Civ. P. 23(b).

Courts have interpreted the first requirement to mean that a party opposing the class must have acted either in a consistent manner toward all class members, such that the defendant's

actions are part of a pattern of activity, or in such a way that there is a scheme common to the class. <u>See</u>, 7AA *Wright, Miller & Kane, Federal Practice and Procedure* § 1775 (3d Ed. 2005). Unlike Rule 23(b)(3), a (b)(2) inquiry focuses almost entirely on the defendant's conduct; individualized facts regarding the plaintiff or class members are not relevant to whether the defendant acted on grounds that are generally applicable to the class. <u>See Coleman v. General Motors Accepteance Corp.</u>, 220 F.R.D. 64, 86-91 (M.D. Tenn. 2004)(conduct of defendant found relevant to inquiry despite variations in damages to class members).

Courts have certified FDCPA classes under Rule 23(b)(2). In <u>Gammon v. GC Services Limited Partnership</u>, 162 F.R.D. 313 (N.D. Ill. 1995), the court certified a (b)(2) class after deciding that although the plaintiff was seeking statutory damages, those damages "would flow directly from the declaratory judgment and are readily calculable on a class wide basis." <u>Id</u>. at 321. The Court also found the fact that the amount of individual statutory damages available to each class member and that statutory damages are all that was being sought, weighed in favor of the (b)(2) certification because the declaratory relief predominated over the monetary relief. <u>Id</u>.

Like the plaintiffs in <u>Gannon</u> and <u>Seawell</u>, this action qualifies for class action treatment under Rule 23(b)(2) because the Hello Letters mailed by Defendant represent actions of general applicability to all members of the Class, thereby making declaratory relief appropriate. Plaintiff's declaratory relief claim is properly certified under Rule 2(b)(2).

### 2.      Rule 23(b)(3) Certification

This case also qualifies for certification under Rule 23(b)(3).[4] As discussed above, there are numerous questions of law and fact common to the Class. Liability for violating the FDCPA

---

[4] Courts have often certified classes for the purposes of both equitable relief and damages. <u>Crempan v. Automobile Club</u>, 22 FEP Cas (BNA) 180 (E.D. Mich. May 19, 1977) (in employment discrimination case, (b)(2) class certified for injunctive relief and (b)(3) class certified for back pay.)

18

will be determined once this Court makes its declaratory ruling on the Hello Letter at issue. Statutory damages can be calculated based on the number of consumers in the class. The FDCPA explicitly contemplates class actions for statutory damages, "without regard to a minimum individual recovery." 15 U.S.C. § 1692 k(a)(2)(B).

Plaintiff has alleged a uniform practice and policy conducted by Defendant against Plaintiff and the Class members. Common issues predominate over individual issues where plaintiffs have alleged a common course of conduct on the part of a defendant. Prudential, 148 F.3d at 314-315. The common issues among the class in this case are: (1) whether Cadle's Hello Letter violates the FDCPA by inferring a connection with the IRS by adding an IRS W-9 form to the letter; (2) whether Cadle's Hello Letter violated the FDCPA by falsely stating that the consumer's failure to fill out and return the W-9 would result in a fine by the IRS; and (3) whether Cadle violated the FDCPA by using the W-9 to deceptively obtain additional information about the consumer. Because each of these issues is subject to generalized proof, common issues predominate over any individual issues that may arise, thereby making certification appropriate. See In re Vitamins Antitrust Litig., 209 F.R.D. 251, 262 (D.D.C.2002) ("[I]n general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position" (internal quotation marks omitted).). Indeed, there are no individual issues to be decided.

The deposition testimony of Daniel Cadle explains that the Hello Letter at issue is identical for all class members:

> Question:   Okay.  The information regarding the principal
> balance, the amount due, the old account number and the new

account number, is that generated by the computer database, or is that done individually, account by account?

Answer: This information is supplied to us from the seller, and it is downloaded into our computer and our computer does it en mass for all of them. The individual information is not put in on each account. It is computer to computer with the intermediary or a disc or e-mail or Excel or, you know, however computers do it.

Question: Right. Okay. So these letters aren't drafted one at a time?

Answer: No. These letters are drafted in bulk.

. . .

Question: Okay. And would the bodies of these letters be the same for all the debtors?

Answer: It would have been identical except for the balances and account numbers and addresses.

Question: Other than the letterhead that is used, does the – do these letters change from company to Company? [objection to form stated]

Answer: The general letter is the same for all companies, because we have looked at it and we have tried to make certain that it does not violate the Fair Debt Collection Procedures Act. So all of them should be almost identical except for the personalized information.

(Cadle Depo at 37-38).

The above testimony insinuates that the Defendant wishes to have the issues raised in this matter settled once and for all. Common questions clearly predominate over any individual questions.

In <u>Seawell v. Universal Fidelity Corp.</u>, 235 F.R.D. 64 (E.D. Pa. 2006), a Pennsylvania District Court recently certified a class against a debt collector on very similar facts. The debt collector used language and a symbol in the dunning letter that allegedly suggested an affiliation with the U.S. government. <u>Id.</u> at 65. When the defendant argued that each class member would

20

be required to show reliance, the Court rejected the argument and held that "[t]he primary question presented by the sole claim in this case – whether the 'Administrative Office' letter would deceive the least sophisticated consumer- is common to all class members' claims." Id. at 67. The Seawell court ultimately certified the statutory damages claim under Rule 23(b)(3).

In addition to finding the predominance of common questions, Rule 23(b)(3) also requires that the Court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." It has been widely recognized that a class action is superior to other available methods--particularly, individual lawsuits--for the fair and efficient adjudication of a suit that affects a large number of persons injured by violations of consumer protection laws or common law. Prudential, 148 F.3d at 316. Consumer class actions, such as the case at bar, easily satisfy the superiority requirement of Rule 23. Wilborn v. Dun & Bradstreet Corporation, 1998 U.S. Dist. LEXIS 12618 at *31-33. See also Lake v. First Nationwide Bank, 156 F.R.D. 615, 626 (E.D. Pa. 1994) (public interest in seeing that rights of consumers are vindicated favors disposition of claims in a class action).

Defendant's debt collection letter has been directed toward a large number of Florida consumers to such an extent that the cost of pursuing individual litigation to seek recovery against a well-financed adversary like Cadle is not feasible or reasonable. Thus, the alternatives to a class action are either no recourse for hundreds of injured consumers, or even in the unlikely event that they all become aware of their rights and could locate counsel, a multiplicity of scattered suits resulting in the inefficient administration of litigation. In addition, in the absence of class certification, the very short statute of limitations provided by Section 1692k(d) of the FDCPA would begin to run and would require scores of unsophisticated consumers, many of whom are unaware that they have claims, to commence suit immediately to obtain any recovery.

Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of this matter.

There is no question but that this class action would be easily manageable. This case presents no manageability difficulties that would preclude class certification.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court GRANT her Motion for Class Certification and enter an ORDER:

1.    Finding the requirements of Rule 23(a) have been established in this matter;

2.    Finding the requirements of Rule 23(b)(2) have been established with regard to Plaintiff's FDCPA declaratory relief claim;

3.    Finding the requirements of Rule 23(b)(3) have been established with regard to Plaintiff's FDCPA damages claim;

4.    Certifying a class of "All consumers in the State of Florida to whom employees of The Cadle Company sent a collection letter that included an IRS W-9 request for Taxpayer Identification Number and referenced an IRS penalty for failing to furnish their Taxpayer Identification Numbers to The Cadle Company," within one year prior to the filing of Plaintiff's Complaint.

5.    Appointing Plaintiff, Bonnie Kuehn, as class representative; and

6.    Appointing Brian W. Warwick and Janet R. Varnell of VARNELL & WARWICK, P.A., as class counsel.

Date:  September 11th 2006.

Respectfully submitted,

_s/Brian W. Warwick_____

**BRIAN W. WARWICK**
Florida Bar No. 0605573
Janet R. Varnell
Florida Bar No. 0071072
**VARNELL & WARWICK, P.A.**
20 La Grande Boulevard
The Villages, Florida  32159
Phone: (352) 753-8600
Fax:    (352) 753-8606
bwwarwick@aol.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 11th day of September, 2006, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system which will send notice of the electronic filing and on this same date a copy of the foregoing was furnished via U.S. Mail, first class postage prepaid to:

Dale T. Golden
Florida Bar No. 094080
**THE PRESTON LAW FIRM**
100 N. Tampa Street, Suite 1975
Tampa, Florida  33602-5888
Phone: 813-275-0404
Fax:    813-275-0304
dgolden@prestonlawfirm.com

By:_ s/Brian W. Warwick_____
**BRIAN W. WARWICK**
Florida Bar No. 0605573
Janet R. Varnell
Florida Bar No. 0071072
**VARNELL & WARWICK, P.A.**
20 La Grande Boulevard
The Villages, Florida  32159