UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BONNIE KUEHN, individually and on behalf
of all others similarly situated,,

            Plaintiff,

-vs-                                                    Case No. 5:04-cv-432-Oc-10GRJ

THE CADLE COMPANY, INC.,

            Defendant.
_____

## O R D E R

The Plaintiff, Bonnie Kuehn, contends that the Defendant, The Cadle Company ("Cadle"), sent her a collection letter in January 2004 attempting to collect an outstanding balance on her Amicus Bank Credit Card. According to Ms. Kuehn, the letter falsely implied a connection between Cadle and the Internal Revenue Service, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq* ("FDCPA"). Ms. Kuehn brought this lawsuit as a putative class action, and seeks relief on behalf of herself and all persons in the State of Florida who were sent a similar collection letter by Cadle implying a connection with the IRS. (Doc. 62).

Cadle has filed two motions to dismiss, (Docs. 53, 65), both of which raise the same argument: that Ms. Kuehn failed to properly list this putative class action on her personal property schedules in her now-closed Chapter 7 Bankruptcy proceeding, thereby divesting

her of standing and this Court of subject matter jurisdiction over the lawsuit.[1]  Ms. Kuehn has responded to both motions to dismiss (Docs. 56, 67), and they are ripe for resolution. For the reasons discussed below, both motions are due to be denied.

## **BACKGROUND AND PROCEDURAL HISTORY**

The facts as alleged in Ms. Kuehn's Second Amended Complaint (Doc. 62), are virtually identical to those in her initial Complaint (Doc. 1) and First Amended Complaint (Doc. 14), and have been previously summarized by the Court (Doc. 39).  In short, as an employee of Amicus FSB, Ms. Kuehn received an Amicus Bank credit card.  Ms. Kuehn used the credit card and maintained a balance on it.  In late 2002, Amicus ceased all electronic banking operations in the United States, and deactivated all of its employee credit cards, effective January 1, 2003.

In January 2004, Cadleway Properties, Inc., an entity owned and operated by Daniel C. Cadle, purchased several thousand Amicus credit card accounts from Amicus FSB, including Ms. Kuehn's.  Cadleway Properties is a holding company with no employees; all of its work is done via contract by employees of Cadle, including all debt collection services.  Daniel Cadle is also the owner and President of Cadle.  Ms. Kuehn alleges that

---

[1] The first motion to dismiss (Doc. 53) was filed against Ms. Kuehn's First Amended Complaint.  On September 12, 2006, Ms. Kuehn, with the Court's approval, filed a Second Amended Complaint (Doc. 62), thereby rendering Cadle's first motion to dismiss moot.  Therefore, while the Court will dispose of both motions in this Order, the Court will focus solely on the arguments Cadle raises in its motion to dismiss the Second Amended Complaint (Doc. 65).

Cadleway Properties hired Cadle to service and collect on the Amicus credit card accounts, as well as the various accounts held by the putative class.

On January 13, 2004, Ms. Kuehn received a letter sent by employees of Cadle purporting to collect on her Amicus credit card account balance. The letter was drafted by Daniel Cadle and is a form letter issued to thousands of debtors across the country. The letter contains the following provision, which Ms. Kuehn contends falsely implies a connection with the Internal Revenue Service in violation of the FDCPA:

> Also enclosed is an **IRS-generated** W-9 to certify your Tax Identification Number (TIN). For individuals, this is your Social Security Number. Please complete this form indicating the above account number, and sign and return it to us as soon as possible. **You are subject to a $50 penalty imposed by the IRS under 26 U.S.C. 6723 if you fail to furnish a TIN.**

Second Am. Complt., ¶ 21 (emphasis in Am. Complt.).

On September 22, 2004, Ms. Kuehn initiated this action against Cadleway Properties, Inc., alleging that the January 13, 2004 letter violated the Truth in Lending Act 15 U.S.C. § 1601 *et seq.*, ("TILA"), and the FDCPA. (Doc. 1). After the Court permitted Ms. Kuehn to engage in limited discovery to determine, in part, the relationship between Cadleway Properties and Cadle, she filed an Amended Complaint on April 25, 2005 dismissing Cadleway Properties and substituting Cadle as the sole defendant (Doc. 14). The Amended Complaint was styled as a class action on behalf of both Ms. Kuehn as an individual and as class representative of two groups: (1) all consumers in the United States to whom Cadle sent any communication seeking to collect on an Amicus FSB credit card

account and to whom Cadle charged interest; and (2) all consumers in the United States to whom Cadle sent a collection letter that included an IRS W-9 request for Taxpayer Identification Number and referenced the IRS penalty for failing to furnish a Taxpayer Identification Number.  The Amended Complaint contained three claims against Cadle:  (1) a claim for statutory and punitive damages for alleged violations of the TILA; (2) a claim for statutory and punitive damages for alleged violations of the FDCPA; and (3) a request for a declaratory judgment that Cadle regularly engages in practices that violate both of these Acts.

On October 14, 2005, Ms.  Kuehn filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court in and for the Middle District of Florida, Orlando Division, Case No.: 6:05-bk-15820-KSJ.  On November 1, 2005, she amended her voluntary petition to include this lawsuit in her schedule of personal property.  However, the schedule listed the lawsuit as a putative class action against Cadleway Properties, Inc., not against Cadle.

On December 9, 2005, Cadleway Properties entered an appearance in the bankruptcy proceedings.  Cadle never moved to intervene.  A Trustee was appointed to administer her estate, and on January 18, 2006, the Trustee filed his Report of No Distribution, stating that there was no property available for distribution from the estate and that the estate had been fully administered.  The bankruptcy proceedings were closed on March 2, 2006.

On March 30, 2006, the Court denied Cadle's motion to dismiss and motion to transfer this case to Bankruptcy Court. (Doc. 39). In particular, the Court found that the Turstee was properly notified of the existence of this lawsuit, and that the Trustee abandoned the lawsuit at the time he issued his report stating that the estate had been fully administered. (Doc. 39 at 8). As such, the lawsuit had reverted back to Ms. Kuehn and the Bankruptcy Court no longer had any jurisdiction over it. Id. The Court also rejected Cadle's arguments that Ms. Kuehn filed suit against the wrong party, and that the Amended Complaint did not relate back to the initial Complaint. Id. at 10-17.

With leave of the Court, Ms. Kuehn filed a Second Amended Complaint on September 12, 2006 (Doc. 62). The Second Amended Complaint, which now controls the case, has narrowed the remaining issues. There are no longer any claims under the TILA. Instead, the complaint consists of two claims against Cadle: (1) a claim for declaratory relief that Cadle regularly engages in practices that violate the FDCPA; and (2) a claim for statutory damages and attorneys' fees for Cadle's alleged violations of the FDCPA. The Second Amended Complaint is still styled as a class action, but has significantly narrowed the putative class. Ms. Kuehn now seeks relief on behalf of herself and

> All consumers in the State of Florida to whom employees of The Cadle Company, (whether working for The Cadle Company or another Cadle-related entity), sent a collection letter that included an IRS W-9 request for Taxpayer Identification Number and referenced an IRS penalty for failing to furnish their Taxpayer Identification Numbers to the Cadle Company.

Second Am. Complt., ¶ 7.

## **DISCUSSION**

5

Cadle premises its motion to dismiss entirely on the accuracy of Ms. Kuehn's bankruptcy filings. In particular, Cadle contends that when Ms. Kuehn amended her schedule of personal property ("Schedule B"), she improperly listed this lawsuit as a class action against Cadleway Properties, not against Cadle. As such, Ms. Kuehn never accurately amended her Schedule B to list this class action lawsuit, which prevented the Trustee from properly considering the lawsuit as part of its administration of Ms. Kuehn's bankruptcy estate. According to Cadle, in such situations, the Trustee never abandons the property, and the debtor is deprived of standing to pursue the cause of action in another court, even when the bankruptcy estate has been otherwise abandoned and proceedings closed.

Ms. Kuehn, however, contends that she did properly list this lawsuit on her amended Schedule B, and that the Trustee abandoned the lawsuit so that it reverted back to Ms. Kuehn such that she has standing to proceed in this Court. She also argues that the fact that she listed the defendant as Cadleway Properties instead of Cadle is a distinction without a difference. Lastly, Ms. Kuehn argues that the Court already resolved the question of the accuracy of her amended Schedule B in its March 30, 2006 Order refusing to transfer this lawsuit back to the Bankruptcy Court, and therefore Cadle's arguments should be dismissed both on the grounds of issue preclusion and res judicata.[2]

---

[2]Because the Court finds that Ms. Kuehn did properly amend her Schedule B to include this lawsuit such that she has standing to proceed in this Court, there is no need to discuss Ms. Kuehn's arguments concerning issue preclusion and res judicata, other than to state that the Court
(continued...)

An "estate" is created when a bankruptcy petition is filed," and includes "all legal or equitable interest of the debtor in property as of the commencement of the case." § 541(a), (a)(1). Thus, "[g]enerally speaking, a pre-petition cause of action is the property of the Chapter 7 bankruptcy estate, and only the trustee in bankruptcy has standing to pursue it." Parker v. Wendy's International, Inc., 365 F.3d 1268, 1272 (11th Cir. 2004) (citing Barger v. City of Cartersville, 348 F.3d 1289, 1292 (11th Cir. 2003)). "Once an asset becomes part of the bankruptcy estate, all rights held by the debtor in the asset are extinguished unless the asset is abandoned back to the debtor pursuant to § 554 of the Bankruptcy code." Parker, 365 F.3d at 1272 (citing 11 U.S.C. § 554(c)). A trustee can abandon any property of the bankruptcy estate, even if it is not listed on any schedule, following notice and a hearing. 11 U.S.C. § 554(a), (b). Alternatively, a trustee can take no action, and the property will be deemed abandoned and revert back to the debtor at the time the bankruptcy proceeding is closed, so long as the property was properly listed on one of the debtor's asset schedules. 11 U.S.C. § 554(c); see also Hutchins v. IRS, 67 F.3d 40, 43 (3d Cir. 1995) ("It is clear that an asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554.").

In this case, Ms. Kuehn's putative class action became an asset of the bankruptcy estate when she filed her Chapter 7 petition on October 14, 2005, even though she did not list the lawsuit on her Schedule B until approximately two weeks later. Parker, 365 F.3d

---

[2](...continued)
does not agree with her position and reading of the Court's March 30, 2006 Order.

at 1272 (property of a bankruptcy estate includes causes of action belonging to the debtor at the commencement of bankruptcy proceedings).  Because there is no evidence that the Trustee conducted a notice and hearing, the only way the lawsuit reverted back to Ms. Kuehn was if the Trustee abandoned it under § 544(c) at the time the bankruptcy proceeding was closed.  And, the only way that happened was if Ms. Kuehn properly listed this lawsuit on her Schedule B.

Cadle argues that Ms. Kuehn failed on this step, because she listed the lawsuit as against Cadleway Properties and not against Cadle.  In other words, Cadle contends that by listing the wrong defendant Ms. Kuehn never listed the lawsuit <u>at all</u>.  This is a strained and unpersuasive argument.  There can be no real debate that Ms. Kuehn did, in fact, list this lawsuit on her amended Schedule B.  There can also be no real debate that the underling facts and legal authority supporting her claims have varied very little; if anything, they have narrowed.  In fact, Cadle does not even mention the substance of Ms. Kuehn's claims.  The only point Cadle raises is the name of the defendant - in other words, the accuracy of her Schedule B listing.

The Court has been unable to find any legal authority which explains the level of detail a debtor must include when listing assets on bankruptcy schedules, and Cadle has not provided any. Section 521, the Bankruptcy Code provision which governs the debtor's duties with respect to listing assets and liabilities, simply states that the debtor must file a schedule of assets and liabilities.  11 U.S.C. § 521(1)((B)(i).  The statute does not provide any guidance as to the level of specificity required.  Schedule B, which is the form the

8

debtor uses to list all personal property, also does not shed any light on the issue. It merely requires, in relevant part, that the debtor list all "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," and provide the estimated value of the claim. Thus, as one court noted:

> There are ... no bright-line rules for how much itemization and specificity is required [for bankruptcy schedules]. What is required is reasonable particularization under the circumstances. The Official Forms themselves have generally been regarded as subject to a rule of substantial compliance. . . . " [I]t would be silly to require a debtor to itemize every dish and fork," but "every bankrupt must do enough itemizing to enable the trustee to determine whether to investigate further."

In re Mohring, 142 B.R. 389, 395 (Bankr. E.D. Cal. 1992), aff'd, 153 B.R. 601 (9th Cir. BAP 1993), aff'd, 24 F.3d 247 (9th Cir. 1994) (quoting Payne v. Wood, 775 F.2d 202, 205-07 (7th Cir. 1985) and citing Fed. R. Bankr. P. 9009 (Advisory Committee Note)).

In this case, the Court finds that Ms. Kuehn sufficiently itemized her lawsuit on her amended Schedule B to enable her Trustee to determine whether to investigate further, thus she is not precluded from continuing with her lawsuit.[3] There is no evidence that when Ms. Kuehn mis-identified the defendant, particularly where she has repeatedly alleged that Cadleway Properties and Cadle are closely-related entities with Cadle performing work on behalf of Cadleway Properties, she prevented the Trustee from being able to investigate

---

[3]See In re Baldwin, 307 B.R. 251 (M.D. Ala. 2004) (plaintiff's claims were not barred because he promptly amended his bankruptcy asset schedule to include pre-existing undisclosed claims, prior to any discharge of his debt and while the bankruptcy case remained open). The Court finds that Ms. Kuehn acted promptly when she amended her Schedule B a mere two weeks after her initial petition was filed.

this claim further. To the contrary, the Trustee was put on notice of the existence of the lawsuit, and could have easily obtained further details. For example, if either Ms. Kuehn or Cadleway Properties are researched on the Court's internal docketing system, the docket sheet for this case is immediately retrieved, including the identity of Cadle as the sole defendant. Notably, the docket sheet still lists this lawsuit as <u>Bonnie Kuehn v. Cadleway Properties, Inc.</u>, even though Cadleway Properties is listed as a terminated defendant.

In addition, several other courts have found that debtors can list lawsuits on their bankruptcy schedules in the most general of terms, even without identifying any defendants, and still satisfy the filing requirements of §521(1)(B)(i) and the abandonment requirements of § 544(c). <u>See, e.g.</u>, <u>In re Bonner</u>, 2005 WL 2136204 (6th Cir. BAP Sept. 6, 2005) (debtors' scheduling of an asset labeled "Auto Accident Claim" without identifying any potential defendants "plainly and unambiguously included any claim that the debtors may have had for any personal injury arising out of the automobile accident."); <u>Reciprocal Merchandising Services, Inc. v. All Advertising Associates, Inc.</u>, 163 B.R. 689 (S.D.N.Y. 1994) (Chapter 11 debtor allowed to continue to pursue claims for unjust enrichment and breach of alleged oral contract even though he failed to name the defendants or detail the nature of the claims in prior bankruptcy proceeding, where there is no evidence that debtor deliberately intended to mislead bankruptcy court or to obtain unfair advantage, and debtor did not conceal during proceedings that it had claims arising out of wrongful transfer of assets). This makes perfect sense for, as Ms. Kuehn points out in her opposition, if the

level of specificity Cadle proposes were mandatory, bankruptcy procedures would be severely frustrated. The Court can think of many instances where a debtor may have incurred an injury and intends to seek legal relief, but has not yet been able to ascertain the identity of the proper defendant. Clearly the debtor would be required to report this potential lawsuit on her bankruptcy schedules, and the failure to identify the defendant should not later prevent her from obtaining relief.

The decisions cited by Cadle are unpersuasive and readily distinguishable, primarily because in each case cited, the debtor never listed the lawsuit on any bankruptcy schedule at any time. See, e.g., Baxley v. Pediatric Services of America, 147 Fed. Appx. 59, 2005 WL 1901624 (11th Cir. Aug. 10, 2005) (debtor had no standing to bring employment discrimination claims that were never disclosed on bankruptcy schedules); Kittle v. ConAgra Poultry Co., 543 S.E. 2d 411 (Ga. App. 2000) (farmer was estopped from pursuing breach of contract, fraud and other claims against poultry company when claims accrued before he filed for bankruptcy and were never listed on any bankruptcy schedules); U.S. ex rel. Gerbert v. Transport Administrative Services, 260 F.3d 909 (8th Cir. 2001) (debtors had no standing to pursue *qui tam* action in federal court where debtors failed to list the potential claim as an asset in their Chapter 7 bankruptcy petition); In re Winburn, 167 B.R. 673 (N.D. Fla. Bankr. 1993) (debtor did not include litigation on Schedule B, and therefore was still part of the bankruptcy estate, even though debtor listed litigation on other bankruptcy documents). In contrast, Ms. Kuehn clearly did disclose the lawsuit on her Schedule B, using the same name that is on the Court's own docket, and the Trustee

clearly had an opportunity to consider the lawsuit as part of his administration of the estate. There is also no evidence, and Cadle does not argue, that Ms. Kuehn engaged in any deliberate deception or intentionally concealed any portion of this lawsuit for her own gain.[4] To the contrary, it cannot be disputed that Cadle was on notice of this lawsuit against it nearly six months before Ms. Kuehn filed for bankruptcy. The Court therefore finds that the Trustee abandoned the lawsuit pursuant to § 544(c) at the time the bankruptcy proceeding was closed, and that Ms. Kuehn has standing to proceed in this Court.

## **CONCLUSION**

Accordingly, upon due consideration, it is hereby ORDERED AND ADJUDGED that The Cadle Company's Motion to Dismiss, Or In The Alternative, Motion for Summary Judgment (Doc. 53) is DENIED AS MOOT, and The Cadle Company's Motion to Dismiss the Second Amended Complaint for Lack of Subject Matter Jurisdiction (Doc. 65) is DENIED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 15th day of March, 2007.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

---

[4]Cf. Burnes v. Pemco Aeroplex, Inc., 291 F.3d 1282 (11th Cir. 2002) (holding that debtor who continually and intentionally failed to list employment discrimination claim on any bankruptcy schedule was judicially estopped from pursuing it in federal district court).