UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BONNIE KUEHN, individually and on behalf
of all others similarly situated,,

          Plaintiff,

-vs-                                          Case No.  5:04-cv-432-Oc-10GRJ

THE CADLE COMPANY, INC.,

          Defendant.
_____

## **O R D E R**

This case is before the Court for consideration of the Plaintiff's Motion for Class Certification (Doc. 61), to which the Defendant has responded (Doc. 70). The motion has been thoroughly briefed by both parties. Upon a review of the record, the Court concludes that the Plaintiff's motion is due to be denied.

### **Background**

The facts, as set forth in the Plaintiff's Second Amended Complaint (Doc. 62), are as follows.[1]  The Plaintiff, Bonnie Kuehn, received an Amicus Bank credit card while employed in Florida at Amicus FSB.  Ms. Kuehn used the credit card and maintained a balance on it.  In late 2002, Amicus ceased all electronic banking operations in the United States, and deactivated all of its employee credit cards, effective January 1, 2003.

---

[1] The Court has previously set out the factual background of this case and the Plaintiff's statement of her claims in its Order on the Defendant's Motion to Dismiss the Plaintiff's Second Amended Complaint (see Doc. 80).  Because the facts and claims have not changed, the Court will recite, in large part, from that Order.

In January 2004, Cadleway Properties, Inc., an entity owned and operated by Daniel C. Cadle, purchased several thousand Amicus credit card accounts from Amicus FSB, including Ms. Kuehn's. Cadleway Properties is a holding company with no employees; all of its work is done via contract by employees of Cadle, including all debt collection services. Daniel Cadle is also the owner and President of Cadle. Ms. Kuehn alleges that Cadleway Properties hired Cadle to service and collect on the Amicus credit card accounts, as well as the various accounts held by the putative class.

On January 13, 2004, Ms. Kuehn received a letter sent by employees of Cadle purporting to collect on her Amicus credit card account balance. The letter was drafted by Daniel Cadle and is a form letter issued to thousands of debtors across the country. The letter contains the following provision, which Ms. Kuehn contends falsely implies a connection with the Internal Revenue Service in violation of the FDCPA:

> Also enclosed is an **IRS-generated** W-9 to certify your Tax Identification Number (TIN). For individuals, this is your Social Security Number. Please complete this form indicating the above account number, and sign and return it to us as soon as possible. **You are subject to a $50 penalty imposed by the IRS under 26 U.S.C. 6723 if you fail to furnish a TIN.**

Second Am. Complt., ¶ 21 (emphasis in Second Am. Complt.).

Ms. Kuehn alleges in her Second Amended Complaint that this language violates several sections of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.,* ("FDCPA"). In particular, Ms. Kuehn alleges that this language violates § 1692e(10) because "it falsely implies that the IRS, an arm of the Federal Government, has been or

2

is going to be involved in the collection of the debt at issue," and because the letter includes an improper request for Taxpayer Identification Numbers.  Second Am. Complt. ¶¶ 28, 34. The language also is alleged to violate § 1692e(9) "in that a W-9 form is only used in certain circumstances when large amounts of debt are forgiven such that the consumer has to include the forgiveness as income.   At the time Defendant sends this form letter no debt has been forgiven and such arrangements are rarely made by debt collectors, if ever.  However, the purpose of sending the IRS W-9 is to illegally obtain information about the consumer that the debt collector does not have." Id. at ¶ 29.  Lastly, Ms. Kuehn contends that this language in the Cadle letter is "patently false" because it is the party forgiving the debt, not the debtor, who is subject to the $50 IRS penalty.

## **Discussion**

Ms. Kuehn seeks certification of a Federal Rule of Civil Procedure 23(b)(2) and (b)(3) class for the recovery of damages provided by § 1692k, as well as injunctive and declaratory relief.  Specifically, Ms. Kuehn proffers the following class definition:

> All consumers in the State of Florida to whom employees of The Cadle Company, (whether working for The Cadle Company or another Cadle-related entity), sent a collection letter that included an IRS W-9 request for Taxpayer Identification Number and referenced an IRS penalty for failing to furnish their Taxpayer Identification Numbers to the Cadle Company.

Second Am. Complt., ¶ 7.  The class members would be those consumers who received such a letter during the one year time period prior to the filing of this action: between

September 22, 2003 and September 22, 2004. The class also excludes persons who received letters sent on debts owned by Cadle itself.[2] (Doc. 61 at 1).

"The initial burden of proof to establish the propriety of class certification rests with the advocate of the class." Rutstein v. Avis Rent-A-Car Systems Inc., 211 F.3d 1228, 1233 (11th Cir. 2000). To obtain class certification, a party must satisfy all four of the threshold requirements of Rule 23(a): numerosity, commonality, typicality and adequacy of representation. If these prerequisites are met, the party seeking certification must then show that the action is maintainable under at least one of the three provisions of Rule 23(b). See Amchen Products, Inc. V. Windsor, 521 U.S. 591, 613-16 (1997); Rutstein, 211 F.3d at 1233-34. In this case, Ms. Kuehn seeks certification under Rule 23(b)(2) - that Cadle has acted in ways generally applicable to the putative class; and Rule 23(b)(3) - that common questions of law or fact predominate over individual issues.

While the FDCPA clearly contemplates class-wide relief, see 15 U.S.C. § 1692k(a)(2)(A), the putative class representative must still first satisfy the requirements of Rule 23. In an attempt to do so in this case, Ms. Kuehn asserts the following: (1) that Cadleway Properties purchased several thousand Amicus Bank credit card accounts, and sent a virtually identical copy of the letter at issue to each account purchased; (2) that the

---

[2]This is a much narrower class than what Ms. Kuehn included in her initial Complaint. That class consisted of two groups: (1) all consumers in the United States to whom Cadle sent any communication seeking to collect on an Amicus FSB credit card account and to whom Cadle charged interest; and (2) all consumers in the United States to whom Cadle sent a collection letter that included an IRS W-9 request for Taxpayer Identification Number and referenced the IRS penalty for failing to furnish a Taxpayer Identification Number. The initial Complaint also contained claims alleging violations of the Truth In Lending Act, 15 U.S.C. § 1601 *et seq.*

majority of Amicus Bank credit cards were issued to Florida consumers, thus it can be assumed that the putative class would number in the thousands; (3) that the factual circumstances are similar among putative class members - namely that they each received a letter from Cadle containing the same false and misleading information concerning the IRS, W-9 Forms, and Taxpayer Identification Numbers; (4) that the legal question is identical among putative class members - namely, whether the language contained within Cadle's letter violated the FDCPA; (5) that the claims of Ms. Kuehn are typical, if not identical, to those of the putative class; and (6) that Ms. Kuehn will fairly and adequately protect the interests of the putative class.  Ms. Kuehn also argues that she has satisfied Rule 23(b)(2) because the identical letter Cadle mailed to all putative class members represents an action of general applicability to all members of the class.  With respect to Rule 23(b)(3), Ms. Kuehn contends that the common issues of law and fact in this case predominate over any individual questions, and that a class action is the superior method for adjudicating this controversy.

Cadle contends in its opposition that Ms. Kuehn has failed to meet the numerosity, typicality and adequacy of representation prerequisites of Rule 23(a).  Without going into much discussion, the Court finds Cadle's arguments on typicality and adequacy to be without merit; primarily because they are based on two arguments (statute of limitations and the accuracy of Ms. Kuehn's bankruptcy schedules) which the Court has already rejected.  See Docs. 39, 80.  However, the Court agrees with Cadle that the issue of numerosity is problematic - or rather, fatal - as Ms. Kuehn has not provided any persuasive

5

evidence that "the class is so numerous that joinder of all members is impracticable." Rule 23 (a)(1); see also Cliff v. Payco General American Credits, Inc., 363 F.3d 1113, 1121 (11th Cir. 2004). Thus, for the following reasons the Court concludes that the certification of a class in this action under either Rule 23(b)(2) or 23(b)(3) for the recovery of both equitable and statutory damages is not appropriate.[3]

In order to establish numerosity, the plaintiff must ordinarily demonstrate "some evidence or reasonable estimate of the number of purported class members." Silva-Arriaga v. Texas Exp., Inc., 222 F.R.D. 684, 688 (M.D. Fla. 2004) (citing Kilgo v. Bowman Transp., Inc., 789 F.2d 859, 878 (11th Cir. 1986)). Although mere numbers are not dispositive, the Eleventh Circuit's general rule is that "less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors." Cox v. American Cast Iron Pipe; Co., 784 F.2d 1546, 1553 (11th Cir. 1986). In reaching its decision, the Court should consider the geographical dispersion of the class members, judicial economy, and the ease of identifying the members of the class and their addresses. Kreuzfeld A.G. v. Carnehammar, 138 F.R.D. 594, 598-99 (S. D. Fla. 1991).

---

[3]Because the Court finds that Ms. Kuehn has not established numerosity, there is no need for the Court to consider any of the other Rule 23(a) prerequisites, or the requirements of Rule 23(b)(2) or 23(b)(3). However, if the Court were to consider any other factors, it would appear that class certification for the recovery of damages under Rule 23(b)(3) would not be appropriate. The federal statute, 15 U.S.C. § 1692k(a)(2)(B), limits class damages to the lesser of $500,000 or 1% of the net worth of Cadle. Normally, these statutory damages would be distributed on a pro rata basis. However, it is possible that some individual members of the class may be able to demonstrate "actual" damages in addition to statutory damages and, (especially in the event of a limited net worth on the part of Cadle), there could be a conflict of interest between members of the class.

Ms. Kuehn has not provided an exact number of putative class members, nor has she even given a close approximation.  Instead, she simply states that the class members would number in the thousands, a number which Cadle challenges.  To support this broad statement, Ms. Kuehn has presented three pieces of evidence.  First, she has submitted the deposition transcript for Daniel C. Cadle, who testified that the letter at issue in this case is a computer-generated, standardized collection letter sent as the first correspondence between Cadle or any of its affiliated companies and the debtor.  It is called within Cadle the "Hello Letter."  Mr. Cadle also testified that the computer database of accounts that is used to generate the Hello Letter on behalf of Cadle and its affiliates has in excess of 100,000 accounts nationwide.[4]

Notably, Mr. Cadle did not provide any testimony as to how many accounts in Cadle's computer database are in Florida, how many of the Hello Letters were sent to debtors in Florida, or even how many letters were sent to Amicus Bank credit card holders.  Instead, he speculated that "it would not surprise" him if there were more than a thousand open accounts in Florida.[5]  Mr. Cadle also testified, however, that the Hello Letter is sent out to every single account, even if the account holder is not subject to the FDCPA, such as a business or other similar entity.  Thus, it is entirely unclear from Mr. Cadle's testimony

---

[4]See Deposition of Daniel C. Cadle, p. 11 ("Cadle Dep."), attached as Exhibit B to Plaintiff's Motion for Class Certification.

[5]Id. at 41.

how many consumers in Florida received a Hello Letter from Cadle or its employees between September 22, 2003 and September 22, 2004.[6]

Second, Ms. Kuehn submitted a heavily redacted copy of Cadle's schedule of accounts, which purports to list the Amicus Bank credit card accounts Cadle purchased. The schedule as submitted to the Court is a 62-page bank document; with the exception of Ms. Kuehn's account all of the names, addresses or other identifying information for each account holder has been redacted. This document does not even indicate the number of accounts Cadle purchased, much less how many of the account holders reside in Florida. As such, this document does not support Ms. Kuehn's request for class certification in any way.

In an attempt to shed some light on the identity of the account holders, Ms. Kuehn has also presented her own affidavit, in which she states that she was employed in Amicus Bank's corporate offices from September 2001 to September 2002. Based on her employment during that time period, Ms. Kuehn avers that Amicus Bank did business in the United States through grocery store locations throughout the South, and that the

---

[6]See, e.g. Sandlin v. Shapiro & Fishman, 168 F.R.D. 662, 666 (M.D. Fla. 1996) (denying class certification based in part on lack of numerosity because plaintiffs relied on the fact that "standard form documents and standard practices were used by defendants with substantial transaction volumes gives rise to a reasonable inference that the number of class members exceeds the 10-40 requirement.").

majority of their banking locations were within Florida. She further states that she observed that the majority of account holders were Florida residents.[7]

Rather, Ms. Kuehn's bold, unsupported statements do nothing to further her class certification motion. The information in Ms. Kuehn's affidavit does not establish a "reasonable estimate" of the putative class - it does not provide any estimate on the number of customers who held Amicus Bank credit cards, it does not even give a rough estimate on the number of Amicus Bank customers in general. Nor does the affidavit more specifically give an estimate as to how many of those customers still had balances on their Amicus Bank credit cards at the time Amicus Bank ceased operations. And it is also worth noting that the time period in which Ms. Kuehn worked at Amicus Bank, and presumably observed the "facts" she alleges in her affidavit, does not correspond with the time period for this lawsuit.[8]

Instead, the only information the Court has as to the number of accounts Cadle may have serviced in Florida between September 2003 and September 2004 is its answers to Ms. Kuehn's interrogatories, propounded during discovery. Interrogatory No. 8 specifically

---

[7] It would have been more helpful to the Court if Ms. Kuehn had presented evidence of the number of Amicus Bank employees who held company credit cards, or the number of Amicus Bank customers in Florida who held Amicus Bank credit cards.

[8] Cf. Leyse v. Corporate Collection Services, Inc., 2006 WL 2708451 (S.D.N.Y. Sept. 18, 2006) (denying class certification in FDCPA case based on alleged unlawful pre-recorded collection telephone calls placed to debtors by defendant where plaintiff did not offer any evidence of how many potential class members received communication from defendant within the applicable statute of limitations, or within the time frame stated in the definition of the putative class).

inquires as to "[h]ow many Amicus FSB Credit Card Accounts were turned over to The Cadle Company for collection."[9] Cadle's response, which is signed under oath and under penalty of perjury, states "[n]one known."[10] Based on this evidence, which Ms. Kuehn has not attempted to rebut, it appears that the number of class members may be closer to zero.[11]

In sum, none of this evidence is relevant in identifying other members of the putative class, which is limited solely to persons in Florida who received Cadle's Hello Letter between September 22, 2003 and September 22, 2004. The evidence is simply too broad and would require the Court to engage in route speculation in order to presume that a sufficiently large enough class exists. While the Court may "make common sense assumptions in order to find support for numerosity," Evans v. United States Pipe & Foundry, 696 F.2d 925, 930 (11th Cir. 1983), the Court will not just accept a number pulled out of thin air. See Golden v. City of Columbus, 404 F.3d 950, 966 (6th Cir. 2005) (unrefined numbers representing the "absolute maximum number of plaintiffs that could be

---

[9] See Interrogatory No. 8, attached as Exhibit A to Cadle's Opposition to Plaintiff's Motion for Class Certification. (Doc. 70).

[10] Id.

[11] Based on the limited evidence before the Court at the class certification stage, the Court cannot say that Cadle's notarized interrogatory responses are false. While it may very well prove true that Cadle and Cadleway Properties are one and the same and that Cadle has violated the FDCPA, that is an issue for another day; the Court's determination regarding class certification must be based upon whether the class satisfies the requirements of Rule 23, not upon an inquiry into the merits of the plaintiffs' claims. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974); Edmonds v. Levine, 233 F.R.D. 638, 640 (S. D. Fla. 2006).

in any class action . . . . is too speculative for purposes of the numerosity requirement."); Demarco v. Edens, 390 F.2d 836, 845 (2d Cir. 1968) ("Where the plaintiff's assertion of numerosity is pure speculation or bare allegations, the motion for class certification fails.").

The other factors the Court must consider when analyzing whether joinder would be impracticable also militate against certification. The narrow description of the class itself - only persons in the state of Florida who received the Hello Letter between September 2003 and September 2004 - demonstrates that the class is most likely not geographically dispersed, but rather is contained within an established jurisdictional boundary. Ms. Kuehn also admits that it would be fairly easy to identify the class members and their addresses as they are all on file with Cadle, and apparently have been produced, but redacted under a privacy agreement.[12] Thus it does not appear at this time that joinder would be impracticable or unduly burdensome.

## Conclusion

This case has been pending for almost three years and Ms. Kuehn has had the benefit of an extensive discovery period, including class discovery. She also received a lengthy extension of time within which to file her motion for class certification. Presumably, if there was any other evidence of class members in existence, Ms. Kuehn would have submitted it by now. Because Ms. Kuehn has failed to present a "reasonable estimate" of

---

[12] See, e.g. Trevizo v. Adams, 455 F.3d 1155 (10th Cir. 2006) (affirming denial of class certification based on lack of numerosity where there was no problem locating the remaining individuals for joinder when all the names and addresses of potential plaintiffs had been provided during discovery).

the number of class members which would satisfy the numerosity prerequisite of Rule 23(a)(1) or established that joinder would be impracticable, she cannot maintain a class action under either Rule 23(b)(2) or Rule 23(b)(3).  Accordingly, upon due consideration, it is ORDERED that the Plaintiff's Motion for Class Certification (Doc. 61) is DENIED.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 15th day of March, 2007.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record