UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

BONNIE KUEHN, individually and on behalf
of all others similarly situated,,

                Plaintiff,

-vs-                                      Case No.  5:04-cv-432-Oc-10GRJ

THE CADLE COMPANY, INC.,

                Defendant.

_____

## **O R D E R**

This Fair Debt Collection Practices Act case is before the Court for consideration of the Plaintiff's Motion for Partial Summary Judgment (Doc. 73).  The Defendant has filed a response in opposition (Doc. 78), and the motion is ripe for disposition.  Upon due consideration, and for the reasons that follow, the Court finds that the motion is due to be granted in part and denied in part.

### **Undisputed Facts**

The Plaintiff, Bonnie Kuehn, is a resident of Leesburg, Florida.  She opened an Amicus FSB Bank Credit Card account at some point prior to 2002.  While the account remained open and active, Ms. Kuehn made purchases and payments on the account in accordance with the terms of the Cardholder Agreement.

In late 2002, Amicus FSB ceased all electronic banking operations in the United States and sent letters to all account holders, including Ms. Kuehn, informing them that

effective January 1, 2003 their credit cards would be deactivated and their accounts closed.

Thereafter, Amicus FSB demanded payment in full on all outstanding balances, but continued to send monthly statements and accepted partial payments until approximately September 29, 2003.  At that time, Amicus FSB was dissolved.

In August 2003, Cadleway Properties, Inc. purchased Amicus FSB credit card accounts that contained outstanding balances, including Ms. Kuehn's.[1]  Cadleway Properties is a purchaser of third party debts and engages in debt collection activities.  It is one of over 40 related companies, all of which engage in various forms of debt purchasing and debt collection activities.

Cadleway Properties does not have any of its own employees.  Instead, Cadleway Properties contracts with the Defendant, The Cadle Company ("Cadle"), to lease employees on an as-needed basis to perform debt collection and other services.  Cadle is also in the business of buying unpaid debts and collecting them from debtors.  Daniel C. Cadle is the President of both Cadleway Properties and Cadle, and appears to be the President and/or possess authority and control over the other related companies.

When Cadleway Properties, Cadle, or any of its other related companies initiates debt collection activities, their first communication with the debtor is through a dunning

---

[1]Ms. Kuehn contends that Cadleway Properties purchased "several thousand" such accounts.  However, Ms. Kuehn has presented no evidence to support this statement, save for a 62-page blank document which Ms. Kuehn represents is a copy of The Cadle Company's schedule of accounts.  As the Court has previously noted, (see Doc. 81 at 8), this heavily redacted document provides no admissible or even relevant evidence, and therefore will not be considered in ruling on this motion.

letter.  The dunning letter is a computer-generated form letter, the template for which was originally drafted by Daniel Cadle.  It is known within the related companies as the "Hello Letter" and informs the debtor that the debt has been purchased, the new account number for the debt, and where future payments are to be made.  Any information obtained through the dunning letters, in addition to the information obtained at the time the debt is purchased, is kept on Cadle's computer database.  This includes information obtained by Cadleway Properties or any related company.

A Hello Letter dated January 13, 2004 was sent to Ms. Kuehn.[2]  The letter informed Ms. Kuehn that her Amicus Bank credit card account had been purchased by Cadleway Properties, and that all future payments should be sent to Cadleway Properties.[3]  The letter provided Ms. Kuehn with a new account number of 0K131033, and listed the "total amount due" on her account as $7,643.23.[4]  The letter also stated, in all capital letters, that: "IN ACCORDANCE WITH 15 U.S.C. § 1692E(11), PLEASE BE ADVISED THAT THE PURPOSE OF THIS LETTER IS TO COLLECT A DEBT, AND ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE."[5]  The Hello Letter was sent on Cadleway Properties letterhead, and signed by Clayton Tawney, Account Officer

---

[2]See January 13, 2004 Letter, attached as Exhibit C to Plaintiff's Motion for Summary Judgment (Doc. 73-2).

[3]Id.

[4]Id.

[5]Id.

for Caldeway Properties.[6]  There is nothing on the face of the letter that would indicate the letter originated from or was sent by anyone at Cadle.

Ms. Kuehn's Hello Letter instructed her to read an attached notice, which stated her rights under the FDCPA to obtain further information or to dispute her debt.  The letter also contained the following provision:

> Also enclosed is an IRS-generated W-9 to certify your Tax Identification Number (TIN).  For individuals, this is your Social Security Number.  Please complete this form indicating the above account number, and sign and return it to us as soon as possible.  You are subject to a $50 penalty imposed by the IRS under 26 U.S.C. § 6723 if you fail to furnish a TIN.[7]

A W-9 form, entitled "Request for Taxpayer Identification Number and Certification" was attached to the back of Ms. Kuehn's Hello Letter.[8]  For several years it has been the practice of Cadleway Properties, Cadle, and its related companies to include this provision and attach a W-9 form to all Hello Letters.

## **Procedural History**

On September 22, 2004, Ms. Kuehn initiated this action as a putative class action against Cadleway Properties, Inc., alleging that the January 13, 2004 letter violated the Truth in Lending Act 15 U.S.C. § 1601 *et seq.*, ("TILA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA").  (Doc.  1).  After the Court permitted

---

[6]Id.

[7]Id.

[8]Id.

Ms. Kuehn to engage in limited discovery to determine, in part, the relationship between Cadleway Properties and Cadle, she filed an Amended Complaint on April 25, 2005 dismissing Cadleway Properties and substituting Cadle as the sole defendant (Doc. 14).

On October 14, 2005, Ms. Kuehn filed a voluntary petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court in and for the Middle District of Florida, Orlando Division, Case No.: 6:05-bk-15820-KSJ. On November 1, 2005, she amended her voluntary petition to include this lawsuit in her schedule of personal property. However, the schedule listed the lawsuit as a putative class action against Cadleway Properties, Inc., not against Cadle.

On December 9, 2005, Cadleway Properties entered an appearance in the bankruptcy proceedings. Cadle never moved to intervene. A Trustee was appointed to administer her estate, and on January 18, 2006, the Trustee filed his Report of No Distribution, stating that there was no property available for distribution from the estate and that the estate had been fully administered. The bankruptcy proceedings were closed on March 2, 2006.

On March 30, 2006, the Court denied Cadle's motion to dismiss and motion to transfer this case to Bankruptcy Court. (Doc. 39). With leave of the Court, Ms. Kuehn filed a Second Amended Complaint on September 12, 2006 (Doc. 62). The Second Amended Complaint, which now controls the case, has narrowed the remaining issues. There are no longer any claims under the TILA. Instead, the complaint consists of two claims against Cadle: (1) a claim for declaratory relief that Cadle regularly engages in practices that

violate the FDCPA and a request for a permanent injunction; and (2) a claim for statutory

damages and attorneys' fees for Cadle's alleged violations of the FDCPA with respect to

the statements in the letter concerning the IRS and W-9 form.

The Second Amended Complaint was still styled as a class action and Ms. Kuehn

filed a motion for class certification on September 12, 2006 (Doc. 61).  On March 15, 2007,

the Court denied Cadle's motions to dismiss Ms. Kuehn's Second Amended Complaint for

lack of subject matter jurisdiction, and denied Ms. Kuehn's motion for class certification.

(Docs. 80, 81).  This case is now before the Court as a single plaintiff action alleging three

violations of the FDCPA, all of which relate to Cadle's statements concerning the IRS and

W-9 form.

### Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment

is appropriate only when the Court is satisfied that "there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law."  In

applying this standard, the Court must examine the pleadings, depositions, answers to

interrogatories, and admissions on file, together with any affidavits and other evidence in

the record "in the light most favorable to the nonmoving party."  Samples on Behalf of

Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme Court held in

Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of

establishing the nonexistence of a triable issue of fact.  If the movant is successful on this

score, the burden of production shifts to the non-moving party who must then come forward

with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

## **Discussion**

The FDCPA was enacted in 1977 to "protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." Hawthorne v. MacAdjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998) (citing S.Rep. No. 95-382 at 1-2 (1977)). Its purpose is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also McKnight v. Benitez, 176 F. Supp. 2d 1301, 1305 (M.D. Fla. 2001).

In order to prevail on her FDCPA claim, Ms. Kuehn must prove that:  (1) she has been the object of collection activity arising from a consumer debt; (2) Cadle is a debt collector as defined by the FDCPA; and (3) Cadle has engaged in an act or omission prohibited by the FDCPA. Fuller v. Becker & Poliakoff, P. A., 192 F. Supp.2d 1361, 1366 (M. D. Fla. 2002); Kaplan v. Assetcare, Inc., 88 F. Supp.2d 1355, 1360-61 (S.D. Fla. 2000). There appears to be no real dispute that Ms. Kuehn has satisfied the first two prongs of this

test.[9] The dispute is over whether Cadle's actions violated the FDCPA's prohibition against the use of "false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

The Eleventh Circuit has adopted the "least sophisticated consumer" standard to analyze claims of deception or misrepresentation under § 1692e. Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985). This objective standard analyzes whether a hypothetical least sophisticated consumer would be deceived or misled by the debt collector's practices. Id. at 1175-76. While this standard is intended to protect the public in general, "even the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." Clomon v. Jackson, 988 F.2d 1314, 1319 (2d Cir. 1993). Accordingly, courts have interpreted this standard in a way that "protects debt collectors against liability for unreasonable misinterpretations of collection notices." Id.; see also Rivera v. Amalgamated Debt Collection Services, Inc., 462 F. Supp. 2d 1223, 1227 (S.D. Fla. 2006).

*I.      The Hello Letter Does Not Violate § 1692e(9)*

---

[9]It is clear that the Hello Letter constitutes "collection activity" and that Ms. Kuehn's balance on her Amicus Bank credit card constitutes "consumer debt." In prior pleadings and motion papers, Cadle has argued that it does not meet the definition of "debt collector" as defined by 15 U.S.C. § 1692a(6) with respect to Ms. Kuehn. However, Cadle has not reasserted this argument in its opposition to summary judgment, other than to state that the Hello Letter came from Cadleway Properties. Accordingly, the Court will assume that Cadle meets the FDCPA's definition of "debt collector" for purposes of this motion only.

Section 1692e(9) of the FDCPA prohibits "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." Ms. Kuehn argues that by including a statement in the Hello Letter that failure to provide a taxpayer identification number may result in a $50 fine from the IRS, and by attaching a copy of a W-9 form, Cadle falsely implied that the IRS authorized Cadle to send the Hello Letter and obtain taxpayer identification numbers, and/or that the IRS was somehow involved in the collection of Ms. Kuehn's debt.  Even when viewed from the perspective of the "least sophisticated consumer," the Court cannot accept such a broad reading of this portion of the Hello Letter.

Case law or other authorities interpreting § 1692e(9) are not plentiful.  However, the few cases which address this provision generally limit findings of violations of § 1692e(9) to situations where the debt collector overtly impersonates a governmental agency, or where the debt collector attempts to hide its identity by using a false alias.  See, e.g. Gradisher v. Check Enforcement Unit, Inc., 210 F. Supp. 2d 907 (W.D. Mich. 2002) (finding violation of § 1692e(9) where debt collector used letterhead and envelopes of the sheriff's office, thereby creating false impression that the letter was generated by the sheriff's office); Sonmore v. Checkrite Recovery Services, Inc., 187 F. Supp.2d 1128, (D. Minn. 2001) (finding violation of § 1692e(9) for falsely representing that collection letter came from an attorney where letter stated "Attorneys at Law," and noted that the letter came from

9

a law firm which acted as a debt collector for the defendant); <u>Wiener v. Bloomfield</u>, 901 F. Supp. 771 (S.D.N.Y. 1995) (finding violation of § 1692e(9) for falsely representing a document to be authorized or approved by a court, where the collection documents were captioned "Summons" and "Summons & Complaint: Service Pursuant to CPLR 312-a" and which adhered to the customary form of such documents when filed in New York State Supreme Court); <u>Johnson v. Eaton</u>, 873 F. Supp. 1019 (M. D. La. 1995) (letter questionnaire and consent judgment mailed by debt collection to consumer, both of which contained legal caption, would have appeared to least sophisticated consumer to have been originated or authorized by court, and violated § 1692e(9)).[10]

Ms. Kuehn's only legal support for her motion follows this line of analysis.  She cites to an Informal Staff Letter from the Federal Trade Commission, which advised a debt collector against insinuating a connection with the IRS.[11]  In that case, the debt collector asked the FTC whether a letter sent on the debt collector's letterhead and entitled "IRS Statutory Notification Letter-Publication 908," and which referred to the creditor's "right to forgive this debt and submit a Form 1099 to the Internal Revenue Service on all bad debt

---

[10]<u>Cf.</u> <u>Gostony v. Diem Corp.</u>, 320 F. Supp. 2d 932, 945-46 (D. Ariz. 2003) (finding no violation of § 1692e(9) where debt collector used pseudonym on collection letter where clear that collection letter came from debt collector); <u>Sokolski v. Trans Union Corp.</u>, 53 F. Supp.2d 307, 315 (E.D.N.Y. 1999) (finding no violation of § 1692e(9) where collection letter contained names of two separate entities, because the letter was actually sent by one of the named entities).

[11]<u>See</u> FTC Informal Staff Letter, Nov. 26, 1993 (attached as Exhibit F to Plaintiff's Motion for Partial Summary Judgment).  While the Court will consider this FTC Staff Letter, it is not binding on the Court's decision.  <u>See</u> <u>Staub v. Harris</u>, 626 F. 2d 275, 279 (3d Cir. 1980).

accounts." violated § 1692e(9).   In response, the FTC stated that the purpose of §

1692e(9):

> is to discourage debt collectors from attempting to use the
> authority of the government deceptively to scare consumers into
> paying the debt at issue.  Thus, d[u]nning consumers with letters
> that look like government documents violates both the letter and
> the spirit of this provision.  We do not believe that letter B "looks
> like a government document" such that it would constitute a per
> se violation of [§ 1692e(9)] since both the text and the inside
> address clearly indicate that the letter originated from a collection
> agency.

Applying this line of legal authority, it is clear that Cadle's Hello Letter does not

violate § 1692e(9).   The letter is on Cadleway Properties letterhead, with Cadleway

Properties' return address at the top.   The letter does not list the IRS or any other

governmental agency in the subject line, is not signed by anyone purporting to be a

representative of the IRS, and does not mention the IRS in any other section of the letter,

save for the three sentences concerning taxpayer identification numbers.   These three

sentences do not in any way imply that Cadle is working on behalf of the IRS, or that the

IRS authorized Cadle to commence debt collection activities against Ms. Kuehn.   Instead,

the Hello Letter explicitly states that it is a letter sent for the purposes of collecting a debt,

and is in compliance with the FDCPA.   In short, the Hello Letter does not look like a

government document and does not violate § 1692e(9).   Even a least sophisticated

consumer would recognize that the Hello Letter was sent by Cadle or Cadleway Properties,

and was not sent or authorized by any governmental entity.[12]  See, e.g., Johnson v. NCB

Collection Services, 799 F. Supp. 1298, 1307 (D. Conn. 1992) (even the least sophisticated

debtor would realize that debt colection letter, which listed return address, in part, as

"Revenue Department" had not been sent by a governmental agency, but rather from the

debt collector itself).[13]

*B.     The Hello Letter Violates § 1692e(10).*

Ms. Kuehn next argues that the sentence "you are subject to a $50 penalty imposed

by the IRS under 26 U.S.C. § 6723 if you fail to furnish a TIN" and the inclusion of a W-9

form with the Hello Letter violates § 1692e(10).  That provision prohibits "[t]he use of any

false representation or deceptive means to collect or attempt to collect any debt or to obtain

information concerning a consumer." § 1692e(10).  Ms. Kuehn argues that the section of

the Hello Letter and attachment at issue falsely implies that if she does not provide her

---

[12]It is also worthwhile to note that Ms. Kuehn has presented no evidence establishing that she was confused in any way by this language in the Hello Letter, or that she thought the letter was sent or authorized by the IRS.

[13]The Court may *sua sponte* grant summary judgment in favor of Cadle on this claim, even though Cadle has not filed its own motion for summary judgment.  "District courts unquestionably possess the power to trigger summary judgment on their own initiative." Massey v. Congress Life Ins. Co., 116 F.3d 1414, 1417 (11th Cir. 1997); see also Burton v. City of Belle Glade, 178 F.3d 1175, 1203-04 (11th Cir. 1999).  In this case, both sides had ample notice that the issue of whether the Hello Letter violated § 1692e(9) would be squarely before the Court, and both sides had the opportunity to present all of their evidence on this claim.  In fact, counsel for Ms. Kuehn admitted during pretrial conference that all of Ms. Kuehn's claims involved solely issues of law, and could be resolved at summary judgment.  See Artistic Entm't v. City of Warner Robins, 331 F.3d 1196, 1202 (11th Cir. 2003) (observing that *sua sponte* summary judgment may be appropriate when litigants have fully developed the evidentiary record and questions of law predominate).

social security number to Cadle as soon as possible, the IRS will immediately levy a $50

penalty against her.  Applying the least sophisticated consumer standard, the Court agrees.

First, it bears noting that the statements in the Hello Letter are not false.  Rather,

they track almost verbatim language in the IRS-generated W-9 Form, as well as the

language of the relevant federal statutes and regulations.[14]  The statements also do not

state that a penalty is a foregone conclusion, only that a debtor may be subject to such a

penalty.  Moreover, under certain proscribed circumstances, the IRS has authorized Cadle

in its role as debt collector to obtain debtor's taxpayer identification numbers for reporting

purposes.[15]  The problem with Cadle's Hello Letter, however, is that the statements at issue

create a misleading impression that if the debtor does not immediately provide her taxpayer

identification number to Cadle, the debtor will immediately be fined by the IRS.

This impression is not accurate; as Cadle readily admits, whether or not the IRS will

levy a fine against a debtor for failure to submit an accurate and complete taxpayer

identification number is purely speculative and contingent on several factors to be

determined by the IRS, not Cadle.  The only time taxpayer identification numbers are even

relevant is when a debt collector such as Cadle decides to either forgive a debtor's debt,

or settles with the debtor for less than the amount owed.  When those situations arise, the

debt collector is required to complete and submit to the IRS a Form 1099-C, which

---

[14]See 26 C.F.R. § 301.6724-1(e)(2)(i)(A)-(C); 26 C.F.R. § 1.6050P-1(e)(7)(ii).

[15]See 26 C.F.R. § 301.6724-1(e)(2)(i)(A)-(C).

specifies the amount of the debt forgiven, as the IRS considers debt forgiveness to be a

source of income to the debtor.[16]  At the time Cadle makes its initial contact with its Hello

Letter, however, Cadle has no idea whether any debt will be forgiven, and thus there is no

need to obtain any debtor's taxpayer identification number.[17]  Further, if the debt collection

process reaches the point where Cadle submits a Form 1099-C to the IRS, the submission

of incorrect or incomplete taxpayer identification numbers does not automatically result in

a $50 penalty.   The IRS will first determine if the deficient information was due to

reasonable cause and not willful neglect.[18]

Thus, several steps must take place at later points in the debt collection process

before the specter of a $50 penalty appears.  Unfortunately, Cadle does not make clear in

its Hello Letter that its request for a taxpayer identification number is premature, and that

IRS penalties will not be levied, if ever, until several other steps take place.  Therefore,

even though Cadle's statements are technically correct, the fact that they are made at such

an early stage in the debt collection process, and do not explain the purpose behind

obtaining such information, renders them misleading in violation of § 1692e(10).

---

[16]See 26 U.S.C. § 6050P; 26 C.F.R. § 1.6050P-2.  The IRS considers debt forgiveness to be taxable income in some situations, and therefore requires that the entity forgiving the debt report that event to the IRS.  See also Deposition of Daniel C. Cadle ("Cadle Dep."), pp. 43, 45, 47, 49, attached as Exhibit A to Plaintiff's Motion for Partial Summary Judgment (Doc. 73-2).

[17]Cadle Dep., pp. 47, 54.

[18]26 U.S.C. § 6724(a).

The Court does not ascribe any sinister motive to Cadle's actions, particularly in light of evidence that the IRS has previously threatened to impose fines on Cadle for failing to provide complete and accurate information when filing 1099-C forms, and that such fines can be waived if Cadle demonstrates a "reasonable effort" was made to obtain taxpayer identification numbers.[19]   However, this does not excuse Cadle's conduct or make the statements in the Hello Letter any less misleading.  The plain and simple fact is that by including language at the point of initial contact with the debtor concerning taxpayer identification numbers, the possibility of a $50 penalty by the IRS, and a IRS W-9 Form, Cadle has engaged in deceptive and misleading conduct using intimidation and fear that the IRS will levy a fine against the debtor in an attempt to collect on a debt and obtain consumer information that it is not otherwise entitled to.

Because the Court finds that a least sophisticated consumer would feel threatened that she would suffer a $50 penalty if she did not comply with Cadle's request as soon as possible, the Court concludes as a matter of law that Cadle's Hello Letter violates § 1692e(10).  Accordingly, Ms. Kuehn is entitled to summary judgment on this claim.[20]

*C.    Damages*

Having reached the merits of all of Ms. Kuehn's FDCPA claims, all that is left to be decided is the question of damages.  Although Ms. Kuehn initially requested that this issue

---

[19]See Affidavit of Dick Platt, ("Platt Aff."), ¶ 5, attached at Doc. 79.

[20]It is also easy to see how this misleading statement is used by Cadle to obtain debtor information, in particular, the debtor's social security number, in violation of § 1692e(10).

be reserved for a determination by the jury, it appears that she has reversed her position on the issue of a jury trial; Ms. Kuehn's counsel admitted at pretrial conference that this entire case can be resolved at summary judgment.[21] Moreover, Ms. Kuehn has not requested any actual damages for either compensation or pain or suffering, but has limited her requested relief to statutory damages, attorney's fees, and declaratory and injunctive relief.  These types of requested relief are typically within the purview of the trial court, not a jury.[22]  Thus, the Court sees no need for a jury trial, particularly where the scope of damages are specified by statute.

The outer parameters of Ms. Kuehn's potential damages award are easily discernable.  The FDCPA caps statutory damages at a maximum of $1,000 per action.  15 U.S.C. § 1692k(a)(2)(A); see also Harper v. Better Business Services, Inc., 961 F.2d 1561, 1563 (11th Cir. 1992).  The minimum amount of damages at issue in this case is $50, the amount of the penalty Ms. Kuehn was threatened with and thus would have had to set aside for future payment to the IRS.  The question now is where Ms. Keuhn's award should fall within this range.

---

[21]In addition, on April 2, 2007 Ms. Kuehn filed an Unopposed Motion for Leave From Court to File Third Amended Complaint, (Doc. 86), in which she seeks to remove her demand for a jury trial on the issue of statutory damages.  Given the Court's resolution of Ms. Kuehn's motion for partial summary judgment, there is no need to rule on her request to further amend her complaint at this time.

[22]Given the Court's rulings on Ms. Kuehn's claims under § 1692e(10), the Court finds that she is also entitled to both declaratory and injunctive relief on those claims.

16

Turning first to Cadle, it does not appear that this is a case involving a small debt collector with little or no assets.  Cadle instead appears to be a large organization, with at least 100,000 open debtor accounts at any given time, and affiliated with at least 40 other related entities.  Thus, imposition of the full $1,000 fine would most likely not present Cadle with any financial difficulties.

The FDCPA also provides some additional guidance; directing the Court to consider, among other relevant factors "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."  § 1692k(b)(1).   It is clear that Cadle's violation of §1692e(10) was intentional, Cadle admits that it asks for taxpayer identification numbers at the earliest possible point of communication with its debtors, and admits that at the time the request was made, there is no immediate need for that information.  The frequency and persistency of Cadle's noncompliance with § 1692e(10) is also quite substantial - although Ms. Kuehn only received one such Hello Letter, Cadle admits that it has been including the language at issue and attaching a W-9 form to every single Hello Letter sent to each of its debtors for several years.  However, Cadle has provided a credible explanation for its actions: Cadle has the best chance of obtaining taxpayer identification numbers - and in turn avoiding any potential IRS fines - if it asks for those numbers at the initial point of contact. While this explanation does not excuse Cadle's noncompliance, it does mitigate to some extent any arguments that Cadle acted in bad faith or with nefarious motives and thus weighs against awarding the maximum amount of damages.

Taking all of these factors into consideration, it appears that an appropriate award of statutory damages to encompass both violations of § 1692e(10) is $750.00.[23]  Because neither party has submitted any evidence or other documentation on the issue of attorney's fees, the Court will reserve ruling on that aspect of Ms. Kuehn's requested relief until the appropriate point in time.  See 15 U.S.C. § 1692k(a)(3) (authorizing the award of a "reasonable attorney's fee" to a prevailing plaintiff).

## Conclusion

Accordingly, upon due consideration, it is ORDERED and ADJUDGED that the Plaintiff's Motion for Partial Summary Judgment (Doc. 73) is GRANTED IN PART AND DENIED IN PART.  The Plaintiff's Motion for Partial Summary Judgment is granted as to her claims under 15 U.S.C. § 1692e(10) and the Plaintiff is awarded statutory damages in the amount of $750.00, as well as declaratory and injunctive relief on those claims.  In all other respects, the Plaintiff's Motion for Partial Summary Judgment is denied.  The Clerk is directed to enter judgment as follows:

(1) in favor of the Plaintiff, Bonnie Kuehn, and against the Defendant, The Cadle Company, as to the Plaintiff's claims that The Cadle Company violated 15 U.S.C. § 1692e(10) and award statutory damages in the amount of $750.00;

---

[23]See, e.g., Wiener v. Bloomfield, 901 F. Supp. 771 (S.D.N.Y. 1995) (awarding statutory damages of less than $1000 for debt collector's multiple violations of FDCPA, where the plaintiff did not plead or prove any actual damages); Strange v. Wexler, 796 F. Supp. 1117 (N.D. Ill. 1992) (awarding statutory damages of only $250 for violation of FDCPA relating to a form letter where form letter was only sent to plaintiff on one isolated occasion).

(2) in favor of the Plaintiff, Bonnie Kuehn, and against the Defendant, The Cadle Company declaring that The Cadle Company's inclusion of the provision "Also enclosed is an IRS-generated W-9 to certify your Tax Identification Number (TIN).  For individuals, this is your Social Security Number.  Please complete this form indicating the above account number, and sign and return it to us as soon as possible.  You are subject to a $50 penalty imposed by the IRS under 26 U.S.C. § 6723 if you fail to furnish a TIN." as well as the attachment of a W-9 Form to its initial dunning letter (the "Hello Letter") violated 15 U.S.C. § 1692e(10).  The Cadle Company is hereby permanently enjoined from including such language in any future Hello Letters;

(3)  in favor of the Defendant and against the Plaintiff as to her claims under 15 U.S.C. § 1692e(9).

(4)  The Clerk is also directed to terminate any pending motions, and close the file. The Court will rule on the question of attorney's fees and costs if and when such issues are properly submitted to the Court and become ripe for consideration.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 6th day of April, 2007.

_____
UNITED STATES DISTRICT JUDGE


Copies to:   Counsel of Record